ROSS ᴇᴛ ᴀʟ. *v.* MOFFITT

No. 73–786.   Argued April 22, 1974—Decided June 17, 1974

Rehnquist, J., delivered the opinion of the Court, in which Burger, C. J., and Stewart, White, Blackmun, and Powell, JJ., joined. Douglas, J., filed a dissenting opinion, in which Brennan and Marshall, JJ., joined, *post,* p. 619.

*Jacob L. Safron,* Assistant Attorney General of North Carolina, argued the cause for petitioners. With him on the brief was *Robert Morgan,* Attorney General.

*Thomas B. Anderson, Jr.,* by appointment of the Court, 415 U. S. 909, argued the cause and filed a brief for respondent.*

Mr. Justice Rehnquist delivered the opinion of the Court.

We are asked in this case to decide whether *Douglas* v. *California,* 372 U. S. 353 (1963), which requires appointment of counsel for indigent state defendants on their first appeal as of right, should be extended to require counsel for discretionary state appeals and for applica-

---

*Briefs of *amici curiae* urging reversal were filed by *Robert L. Shevin,* Attorney General, and *Enoch J. Whitney,* Assistant Attorney General, for the State of Florida; by *William J. Scott,* Attorney General, and *James B. Zagel,* Assistant Attorney General, for the State of Illinois; and by *Andrew P. Miller,* Attorney General, and *Robert E. Shepherd, Jr.,* Assistant Attorney General, for the Commonwealth of Virginia.

*Marshall J. Hartman* and *James F. Flug* filed a brief for the National Legal Aid and Defender Assn. as *amicus curiae* urging affirmance.

tions for review in this Court. The Court of Appeals for the Fourth Circuit held that such appointment was required by the Due Process and Equal Protection Clauses of the Fourteenth Amendment.[1]

# I

The case now before us has resulted from consolidation of two separate cases, North Carolina criminal prosecutions brought in the respective Superior Courts for the counties of Mecklenburg and Guilford. In both cases respondent pleaded not guilty to charges of forgery and uttering a forged instrument, and because of his indigency was represented at trial by court-appointed counsel. He was convicted and then took separate appeals to the North Carolina Court of Appeals, where he was again represented by court-appointed counsel, and his convictions were affirmed.[2] At this point the procedural histories of the two cases diverge.

Following affirmance of his Mecklenburg County conviction, respondent sought to invoke the discretionary review procedures of the North Carolina Supreme Court. His court-appointed counsel approached the Mecklenburg County Superior Court about possible appointment to represent respondent on this appeal, but counsel was informed that the State was not required to furnish counsel for that petition. Respondent sought collateral relief in both the state and federal courts, first raising his right-to-counsel contention in a habeas corpus petition filed in the United States District Court for the Western District of North Carolina in February 1971. Relief was denied at that time, and respondent's appeal to the Court

---

[1] 483 F. 2d 650 (1973).

[2] *State* v. *Moffitt*, 9 N. C. App. 694, 177 S. E. 2d 324 (1970) (Mecklenburg); *State* v. *Moffitt*, 11 N. C. App. 337, 181 S. E. 2d 184 (1971) (Guilford).

of Appeals for the Fourth Circuit was dismissed by stipulation in order to allow respondent to first exhaust state remedies on this issue. After exhausting state remedies, he reapplied for habeas relief, which was again denied. Respondent appealed that denial to the Court of Appeals for the Fourth Circuit.

Following affirmance of his conviction on the Guilford County charges, respondent also sought discretionary review in the North Carolina Supreme Court. On this appeal, however, respondent was not denied counsel but rather was represented by the public defender who had been appointed for the trial and respondent's first appeal. The North Carolina Supreme Court denied certiorari.[3] Respondent then unsuccessfully petitioned the Superior Court for Guilford County for court-appointed counsel to prepare a petition for a writ of certiorari to this Court, and also sought post-conviction relief throughout the state courts. After these motions were denied, respondent again sought federal habeas relief, this time in the United States District Court for the Middle District of North Carolina. That court denied relief, and respondent took an appeal to the Court of Appeals for the Fourth Circuit.

The Court of Appeals reversed the two District Court judgments, holding that respondent was entitled to the assistance of counsel at state expense both on his petition for review in the North Carolina Supreme Court and on his petition for certiorari to this Court. Reviewing the procedures of the North Carolina appellate system and the possible benefits that counsel would provide for indigents seeking review in that system, the court stated:

"As long as the state provides such procedures and allows other convicted felons to seek access to the

---

[3] *State* v. *Moffitt,* 279 N. C. 396, 183 S. E. 2d 247 (1971).

higher court with the help of retained counsel, there is a marked absence of fairness in denying an indigent the assistance of counsel as he seeks access to the same court." [4]

This principle was held equally applicable to petitions for certiorari to this Court. For, said the Court of Appeals, "[t]he same concepts of fairness and equality, which require counsel in a first appeal of right, require counsel in other and subsequent discretionary appeals." [5]

We granted certiorari, 414 U. S. 1128, to consider the Court of Appeals' decision in light of *Douglas* v. *California,* and apparently conflicting decisions of the Courts of Appeals for the Seventh and Tenth Circuits.[6] For the reasons hereafter stated we reverse the Court of Appeals.

## II

This Court, in the past 20 years, has given extensive consideration to the rights of indigent persons on appeal. In *Griffin* v. *Illinois,* 351 U. S. 12 (1956), the first of the pertinent cases, the Court had before it an Illinois rule allowing a convicted criminal defendant to present claims of trial error to the Supreme Court of Illinois only if he procured a transcript of the testimony adduced at his trial.[7] No exception was made for the indigent

---

[4] 483 F. 2d, at 654.

[5] *Id.,* at 655. The court then decided to remand the case to the District Court to "appraise the substantiality of the federal claim." The court noted that it had no opportunity to examine the papers filed in the State Supreme Court and said that "[i]n the circumstances of this case . . . , where the only remedy available to the District Court would be the prisoner's release on a writ of habeas corpus," it was appropriate for the District Court to determine whether respondent's claim was "patently frivolous." *Ibid.*

[6] See *United States ex rel. Pennington* v. *Pate,* 409 F. 2d 757 (CA7 1969); *Peters* v. *Cox,* 341 F. 2d 575 (CA10 1965).

[7] See 351 U. S., at 13 n. 2.

defendant, and thus one who was unable to pay the cost of obtaining such a transcript was precluded from obtaining appellate review of asserted trial error. Mr. Justice Frankfurter, who cast the deciding vote, said in his concurring opinion:

". . . Illinois has decreed that only defendants who can afford to pay for the stenographic minutes of a trial may have trial errors reviewed on appeal by the Illinois Supreme Court." *Id.*, at 22.

The Court in *Griffin* held that this discrimination violated the Fourteenth Amendment.

Succeeding cases invalidated similar financial barriers to the appellate process, at the same time reaffirming the traditional principle that a State is not obliged to provide any appeal at all for criminal defendants. *McKane* v. *Durston,* 153 U. S. 684 (1894). The cases encompassed a variety of circumstances but all had a common theme. For example, *Lane* v. *Brown,* 372 U. S. 477 (1963), involved an Indiana provision declaring that only a public defender could obtain a free transcript of a hearing on a *coram nobis* application. If the public defender declined to request one, the indigent prisoner seeking to appeal had no recourse. In *Draper* v. *Washington,* 372 U. S. 487 (1963), the State permitted an indigent to obtain a free transcript of the trial at which he was convicted only if he satisfied the trial judge that his contentions on appeal would not be frivolous. The appealing defendant was in effect bound by the trial court's conclusions in seeking to review the determination of frivolousness, since no transcript or its equivalent was made available to him. In *Smith* v. *Bennett,* 365 U. S. 708 (1961), Iowa had required a filing fee in order to process a state habeas corpus application by a convicted defendant, and in *Burns* v. *Ohio,* 360 U. S. 252 (1959), the State of Ohio required a $20 filing fee in

order to move the Supreme Court of Ohio for leave to appeal from a judgment of the Ohio Court of Appeals affirming a criminal conviction. Each of these state-imposed financial barriers to the adjudication of a criminal defendant's appeal was held to violate the Fourteenth Amendment.

The decisions discussed above stand for the proposition that a State cannot arbitrarily cut off appeal rights for indigents while leaving open avenues of appeal for more affluent persons. In *Douglas* v. *California,* 372 U. S. 353 (1963), however, a case decided the same day as *Lane, supra,* and *Draper, supra,* the Court departed somewhat from the limited doctrine of the transcript and fee cases and undertook an examination of whether an indigent's access to the appellate system was adequate. The Court in *Douglas* concluded that a State does not fulfill its responsibility toward indigent defendants merely by waiving its own requirements that a convicted defendant procure a transcript or pay a fee in order to appeal, and held that the State must go further and provide counsel for the indigent on his first appeal as of right. It is this decision we are asked to extend today.

Petitioners in *Douglas,* each of whom had been convicted by a jury on 13 felony counts, took appeals as of right to the California District Court of Appeal. No filing fee was exacted of them, no transcript was required in order to present their arguments to the Court of Appeal, and the appellate process was therefore open to them. Petitioners, however, claimed that they not only had the right to make use of the appellate process, but were also entitled to court-appointed and state-compensated counsel because they were indigent. The California appellate court examined the trial record on its own initiative, following the then-existing rule in California, and concluded that " 'no good whatever could be

served by appointment of counsel.' " 372 U. S., at 355. It therefore denied petitioners' request for the appointment of counsel.

This Court held unconstitutional California's requirement that counsel on appeal would be appointed for an indigent only if the appellate court determined that such appointment would be helpful to the defendant or to the court itself. The Court noted that under this system an indigent's case was initially reviewed on the merits without the benefit of any organization or argument by counsel. By contrast, persons of greater means were not faced with the preliminary *"ex parte* examination of the record," *id.*, at 356, but had their arguments presented to the court in fully briefed form. The Court noted, however, that its decision extended only to initial appeals as of right, and went on to say:

> "We need not now decide whether California would have to provide counsel for an indigent seeking a discretionary hearing from the California Supreme Court after the District Court of Appeal had sustained his conviction . . . or whether counsel must be appointed for an indigent seeking review of an appellate affirmance of his conviction in this Court by appeal as of right or by petition for a writ of certiorari which lies within the Court's discretion. But it is appropriate to observe that a State can, consistently with the Fourteenth Amendment, provide for differences so long as the result does not amount to a denial of due process or an 'invidious discrimination.' *Williamson* v. *Lee Optical Co.,* 348 U. S. 483, 489; *Griffin* v. *Illinois, supra,* p. 18. Absolute equality is not required; lines can be and are drawn and we often sustain them." *Id.,* at 356–357.

The precise rationale for the *Griffin* and *Douglas* lines of cases has never been explicitly stated, some support

being derived from the Equal Protection Clause of the Fourteenth Amendment, and some from the Due Process Clause of that Amendment.[8] Neither Clause by itself provides an entirely satisfactory basis for the result reached, each depending on a different inquiry which emphasizes different factors. "Due process" emphasizes fairness between the State and the individual dealing with the State, regardless of how other individuals in the same situation may be treated. "Equal protection," on the other hand, emphasizes disparity in treatment by a State between classes of individuals whose situations are arguably indistinguishable. We will address these issues separately in the succeeding sections.

## III

Recognition of the due process rationale in *Douglas* is found both in the Court's opinion and in the dissenting opinion of Mr. Justice Harlan. The Court in *Douglas* stated that "[w]hen an indigent is forced to run this gantlet of a preliminary showing of merit, the right to appeal does not comport with fair procedure." 372 U. S., at 357. Mr. Justice Harlan thought that the due process issue in *Douglas* was the only one worthy of extended

---

[8] The Court of Appeals in this case, for example, examined both possible rationales, stating:

"If the holding [in *Douglas*] be grounded on the equal protection clause, inequality in the circumstances of these cases is as obvious as it was in the circumstances of *Douglas*. If the holding in *Douglas* were grounded on the due process clause, and Mr. Justice Harlan in dissent thought the discourse should have been in those terms, due process encompasses elements of equality. There simply cannot be due process of the law to a litigant deprived of all professional assistance when other litigants, similarly situated, are able to obtain professional assistance and to be benefited by it. The same concepts of fairness and equality, which require counsel in a first appeal of right, require counsel in other and subsequent discretionary appeals." 483 F. 2d, at 655.

consideration, remarking: "The real question in this case, I submit, and the only one that permits of satisfactory analysis, is whether or not the state rule, as applied in this case, is consistent with the requirements of fair procedure guaranteed by the Due Process Clause." *Id.,* at 363.

We do not believe that the Due Process Clause requires North Carolina to provide respondent with counsel on his discretionary appeal to the State Supreme Court. At the trial stage of a criminal proceeding, the right of an indigent defendant to counsel is fundamental and binding upon the States by virtue of the Sixth and Fourteenth Amendments. *Gideon* v. *Wainwright,* 372 U. S. 335 (1963). But there are significant differences between the trial and appellate stages of a criminal proceeding. The purpose of the trial stage from the State's point of view is to convert a criminal defendant from a person presumed innocent to one found guilty beyond a reasonable doubt. To accomplish this purpose, the State employs a prosecuting attorney who presents evidence to the court, challenges any witnesses offered by the defendant, argues rulings of the court, and makes direct arguments to the court and jury seeking to persuade them of the defendant's guilt. Under these circumstances "reason and reflection require us to recognize that in our adversary system of criminal justice, any person haled into court, who is too poor to hire a lawyer, cannot be assured a fair trial unless counsel is provided for him." *Id.,* at 344.

By contrast, it is ordinarily the defendant, rather than the State, who initiates the appellate process, seeking not to fend off the efforts of the State's prosecutor but rather to overturn a finding of guilt made by a judge or jury below. The defendant needs an attorney on appeal not as a shield to protect him against being "haled into court"

by the State and stripped of his presumption of innocence, but rather as a sword to upset the prior determination of guilt. This difference is significant for, while no one would agree that the State may simply dispense with the trial stage of proceedings without a criminal defendant's consent, it is clear that the State need not provide any appeal at all. *McKane* v. *Durston,* 153 U. S. 684 (1894). The fact that an appeal *has* been provided does not automatically mean that a State then acts unfairly by refusing to provide counsel to indigent defendants at every stage of the way. *Douglas* v. *California, supra.* Unfairness results only if indigents are singled out by the State and denied meaningful access to the appellate system because of their poverty. That question is more profitably considered under an equal protection analysis.

## IV

Language invoking equal protection notions is prominent both in *Douglas* and in other cases treating the rights of indigents on appeal. The Court in *Douglas,* for example, stated:

> "[W]here the merits of *the one and only appeal* an indigent has as of right are decided without benefit of counsel, we think an unconstitutional line has been drawn between rich and poor." 372 U. S., at 357. (Emphasis in original.)

The Court in *Burns* v. *Ohio,* stated the issue in the following terms:

> "[O]nce the State chooses to establish appellate review in criminal cases, it may not foreclose indigents from access to any phase of that procedure because of their poverty." 360 U. S., at 257.

Despite the tendency of all rights "to declare them-

selves absolute to their logical extreme,"[9] there are obviously limits beyond which the equal protection analysis may not be pressed without doing violence to principles recognized in other decisions of this Court. The Fourteenth Amendment "does not require absolute equality or precisely equal advantages," *San Antonio Independent School District* v. *Rodriguez,* 411 U. S. 1, 24 (1973), nor does it require the State to "equalize economic conditions." *Griffin* v. *Illinois,* 351 U. S., at 23 (Frankfurter, J., concurring). It does require that the state appellate system be "free of unreasoned distinctions," *Rinaldi* v. *Yeager,* 384 U. S. 305, 310 (1966), and that indigents have an adequate opportunity to present their claims fairly within the adversary system. *Griffin* v. *Illinois, supra; Draper* v. *Washington,* 372 U. S. 487 (1963). The State cannot adopt procedures which leave an indigent defendant "entirely cut off from any appeal at all," by virtue of his indigency, *Lane* v. *Brown,* 372 U. S., at 481, or extend to such indigent defendants merely a "meaningless ritual" while others in better economic circumstances have a "meaningful appeal." *Douglas* v. *California, supra,* at 358. The question is not one of absolutes, but one of degrees. In this case we do not believe that the Equal Protection Clause, when interpreted in the context of these cases, requires North Carolina to provide free counsel for indigent defendants seeking to take discretionary appeals to the North Carolina Supreme Court, or to file petitions for certiorari in this Court.

A. The North Carolina appellate system, as are the appellate systems of almost half the States,[10] is multi-tiered, providing for both an intermediate Court of Appeals and a Supreme Court. The Court of Appeals was

---

[9] *Hudson County Water Co.* v. *McCarter,* 209 U. S. 349, 355 (1908).

[10] See Brief for Respondent 9 n. 5.

created effective January 1, 1967, and, like other intermediate state appellate courts, was intended to absorb a substantial share of the caseload previously burdening the Supreme Court. In criminal cases, an appeal as of right lies directly to the Supreme Court in all cases which involve a sentence of death or life imprisonment, while an appeal of right in all other criminal cases lies to the Court of Appeals. N. C. Gen. Stat. § 7A–27 (1969 and Supp. 1973). A second appeal of right lies to the Supreme Court in any criminal case "(1) [w]hich directly involves a substantial question arising under the Constitution of the United States or of this State, or (2) [i]n which there is a dissent. . . ." N. C. Gen. Stat. § 7A–30 (1969). All other decisions of the Court of Appeals on direct review of criminal cases may be further reviewed in the Supreme Court on a discretionary basis.

The statute governing discretionary appeals to the Supreme Court is N. C. Gen. Stat. § 7A–31 (1969). This statute provides, in relevant part, that "[i]n any cause in which appeal has been taken to the Court of Appeals . . . the Supreme Court may in its discretion, on motion of any party to the cause or on its own motion, certify the cause for review by the Supreme Court, either before or after it has been determined by the Court of Appeals." The statute further provides that "[i]f the cause is certified for transfer to the Supreme Court after its determination by the Court of Appeals, the Supreme Court reviews the decision of the Court of Appeals." The choice of cases to be reviewed is not left entirely within the discretion of the Supreme Court but is regulated by statutory standards. Subsection (c) of this provision states:

"In causes subject to certification under subsection (a) of this section, certification may be made by the Supreme Court after determination of the cause by the Court of Appeals when in the opinion of the

Supreme Court (1) The subject matter of the appeal has significant public interest, or (2) The cause involves legal principles of major significance to the jurisprudence of the State, or (3) The decision of the Court of Appeals appears likely to be in conflict with a decision of the Supreme Court."

Appointment of counsel for indigents in North Carolina is governed by N. C. Gen. Stat. § 7A–450 *et seq.* (1969 and Supp. 1973). These provisions, although perhaps on their face broad enough to cover appointments such as those respondent sought here,[11] have generally been construed to limit the right to appointed counsel in criminal cases to direct appeals taken as of right. Thus North Carolina has followed the mandate of *Douglas* v. *California, supra,* and authorized appointment of counsel for a convicted defendant appealing to the intermediate Court of Appeals, but has not gone beyond *Douglas* to provide for appointment of counsel for a defendant who seeks either discretionary review in the Supreme Court of North Carolina or a writ of certiorari here.

B. The facts show that respondent, in connection with his Mecklenburg County conviction, received the benefit of counsel in examining the record of his trial and in preparing an appellate brief on his behalf for the state Court of Appeals. Thus, prior to his seeking discretionary review in the State Supreme Court, his claims had "once been presented by a lawyer and passed upon by an appellate court." *Douglas* v. *California,* 372 U. S.,

---

[11] For example, subsection (b)(6) of § 7A–451, effective at the time of respondent's appeals, provides for counsel on "[d]irect review of any judgment or decree, including review by the United States Supreme Court of final judgment or decrees rendered by the highest court of North Carolina in which decision may be had." But this provision apparently has not been construed to allow counsel for permissive appellate procedures. See 483 F. 2d, at 652.

at 356. We do not believe that it can be said, therefore, that a defendant in respondent's circumstances is denied meaningful access to the North Carolina Supreme Court simply because the State does not appoint counsel to aid him in seeking review in that court. At that stage he will have, at the very least, a transcript or other record of trial proceedings, a brief on his behalf in the Court of Appeals setting forth his claims of error, and in many cases an opinion by the Court of Appeals disposing of his case. These materials, supplemented by whatever submission respondent may make *pro se,* would appear to provide the Supreme Court of North Carolina with an adequate basis for its decision to grant or deny review.

We are fortified in this conclusion by our understanding of the function served by discretionary review in the North Carolina Supreme Court. The critical issue in that court, as we perceive it, is not whether there has been "a correct adjudication of guilt" in every individual case, see *Griffin* v. *Illinois,* 351 U. S., at 18, but rather whether "the subject matter of the appeal has significant public interest," whether "the cause involves legal principles of major significance to the jurisprudence of the State," or whether the decision below is in probable conflict with a decision of the Supreme Court. The Supreme Court may deny certiorari even though it believes that the decision of the Court of Appeals was incorrect, see *Peaseley* v. *Virginia Iron, Coal & Coke Co.,* 282 N. C. 585, 194 S. E. 2d 133 (1973), since a decision which appears incorrect may nevertheless fail to satisfy any of the criteria discussed above. Once a defendant's claims of error are organized and presented in a lawyerlike fashion to the Court of Appeals, the justices of the Supreme Court of North Carolina who make the decision to grant or deny discretionary review should be able to ascertain whether his case satisfies the standards established by the legislature for such review.

This is not to say, of course, that a skilled lawyer, particularly one trained in the somewhat arcane art of preparing petitions for discretionary review, would not prove helpful to any litigant able to employ him. An indigent defendant seeking review in the Supreme Court of North Carolina is therefore somewhat handicapped in comparison with a wealthy defendant who has counsel assisting him in every conceivable manner at every stage in the proceeding. But both the opportunity to have counsel prepare an initial brief in the Court of Appeals and the nature of discretionary review in the Supreme Court of North Carolina make this relative handicap far less than the handicap borne by the indigent defendant denied counsel on his initial appeal as of right in *Douglas*. And the fact that a particular service might be of benefit to an indigent defendant does not mean that the service is constitutionally required. The duty of the State under our cases is not to duplicate the legal arsenal that may be privately retained by a criminal defendant in a continuing effort to reverse his conviction, but only to assure the indigent defendant an adequate opportunity to present his claims fairly in the context of the State's appellate process. We think respondent was given that opportunity under the existing North Carolina system.

## V

Much of the discussion in the preceding section is equally relevant to the question of whether a State must provide counsel for a defendant seeking review of his conviction in this Court. North Carolina will have provided counsel for a convicted defendant's only appeal as of right, and the brief prepared by that counsel together with one and perhaps two North Carolina appellate opinions will be available to this Court in order that it may decide whether or not to grant certiorari. This

Court's review, much like that of the Supreme Court of North Carolina, is discretionary and depends on numerous factors other than the perceived correctness of the judgment we are asked to review.

There is also a significant difference between the source of the right to seek discretionary review in the Supreme Court of North Carolina and the source of the right to seek discretionary review in this Court. The former is conferred by the statutes of the State of North Carolina, but the latter is granted by statute enacted by Congress. Thus the argument relied upon in the *Griffin* and *Douglas* cases, that the State having once created a right of appeal must give all persons an equal opportunity to enjoy the right, is by its terms inapplicable. The right to seek certiorari in this Court is not granted by any State, and exists by virtue of federal statute with or without the consent of the State whose judgment is sought to be reviewed.

The suggestion that a State is responsible for providing counsel to one petitioning this Court simply because it initiated the prosecution which led to the judgment sought to be reviewed is unsupported by either reason or authority. It would be quite as logical under the rationale of *Douglas* and *Griffin*, and indeed perhaps more so, to require that the Federal Government or this Court furnish and compensate counsel for petitioners who seek certiorari here to review state judgments of conviction. Yet this Court has followed a consistent policy of denying applications for appointment of counsel by persons seeking to file jurisdictional statements or petitions for certiorari in this Court. See, *e. g., Drumm* v. *California,* 373 U. S. 947 (1963); *Mooney* v. *New York,* 373 U. S. 947 (1963); *Oppenheimer* v. *California,* 374 U. S. 819 (1963). In the light of these authorities, it would be odd, indeed, to read the Fourteenth Amendment to

impose such a requirement on the States, and we decline to do so.

## VI

We do not mean by this opinion to in any way discourage those States which have, as a matter of legislative choice, made counsel available to convicted defendants at all stages of judicial review. Some States which might well choose to do so as a matter of legislative policy may conceivably find that other claims for public funds within or without the criminal justice system preclude the implementation of such a policy at the present time. North Carolina, for example, while it does not provide counsel to indigent defendants seeking discretionary review on appeal, does provide counsel for indigent prisoners in several situations where such appointments are not required by any constitutional decision of this Court.[12] Our reading

[12] Section 7A–451 of N. C. Gen. Stat. (Supp. 1973) provides:

"(a) An indigent person is entitled to services of counsel in the following actions and proceedings:

"(1) Any case in which imprisonment, or a fine of five hundred dollars ($500.00), or more, is likely to be adjudged;

"(2) A hearing on a petition for a writ of habeas corpus under Chapter 17 of the General Statutes;

"(3) A post-conviction proceeding under Chapter 15 of the General Statutes;

"(4) A hearing for revocation of probation, if confinement is likely to be adjudged as a result of the hearing;

"(5) A hearing in which extradition to another state is sought;

"(6) A proceeding for judicial hospitalization under Chapter 122, Article 7 (Judicial Hospitalization) or Article 11 (Mentally Ill Criminals), of the General Statutes and a proceeding for involuntary commitment to a treatment facility under Article 5 of Chapter 122 of the General Statutes;

"(7) A civil arrest and bail proceeding under Chapter 1, Article 34, of the General Statutes; and

"(8) In the case of a juvenile, a hearing as a result of which commitment to an institution or transfer to the superior court for trial on a felony charge is possible."

of the Fourteenth Amendment leaves these choices to the State, and respondent was denied no right secured by the Federal Constitution when North Carolina refused to provide counsel to aid him in obtaining discretionary appellate review.

The judgment of the Court of Appeals' holding to the contrary is

*Reversed.*

MR. JUSTICE DOUGLAS, with whom MR. JUSTICE BRENNAN and MR. JUSTICE MARSHALL concur, dissenting.

I would affirm the judgment below because I am in agreement with the opinion of Chief Judge Haynsworth for a unanimous panel in the Court of Appeals. 483 F. 2d 650.

In *Douglas* v. *California,* 372 U. S. 353, we considered the necessity for appointed counsel on the first appeal as of right, the only issue before us. We did not deal with the appointment of counsel for later levels of discretionary review, either to the higher state courts or to this Court, but we noted that "there can be no equal justice where the kind of an appeal a man enjoys 'depends on the amount of money he has.'" *Id.,* at 355.

Chief Judge Haynsworth could find "no logical basis for differentiation between appeals of right and permissive review procedures in the context of the Constitution and the right to counsel." 483 F. 2d, at 653. More familiar with the functioning of the North Carolina criminal justice system than are we, he concluded that "in the context of constitutional questions arising in criminal prosecutions, permissive review in the state's highest court may be predictably the most meaningful review the conviction will receive." *Ibid.* The North Carolina Court of Appeals, for example, will be constrained in diverging from an earlier opinion of the State Supreme Court, even if

subsequent developments have rendered the earlier Supreme Court decision suspect. "[T]he state's highest court remains the ultimate arbiter of the rights of its citizens." *Ibid.*

Chief Judge Haynsworth also correctly observed that the indigent defendant proceeding without counsel is at a substantial disadvantage relative to wealthy defendants represented by counsel when he is forced to fend for himself in seeking discretionary review from the State Supreme Court or from this Court. It may well not be enough to allege error in the courts below in layman's terms; a more sophisticated approach may be demanded: *

"An indigent defendant is as much in need of the

---

*An indigent defendant proceeding without the assistance of counsel would be attempting to satisfy one of three statutory standards for review when seeking certiorari from the North Carolina Supreme Court:

"(1) The subject matter of the appeal has significant public interest, or

"(2) The cause involves legal principles of major significance to the jurisprudence of the State, or

"(3) The decision of the Court of Appeals appears likely to be in conflict with a decision of the Supreme Court." N. C. Gen. Stat. § 7A–31 (c) (1969).

It seems likely that only the third would have been explored in a brief on the merits before the Court of Appeals, and the indigent defendant would draw little assistance from that brief in attempting to satisfy either of the first two standards.

Rule 19 of this Court provides some guidelines for the exercise of our certiorari jurisdiction, including decisions by a state court on federal questions not previously decided by this Court; but it may not be enough simply to assert that there was error in the decision of the court below. Cf. *Magnum Import Co.* v. *Coty*, 262 U. S. 159, 163. Moreover, this Court is greatly aided by briefs prepared with accuracy, brevity, and clarity in its determination of whether certiorari should be granted. See *Furness, Withy & Co.* v. *Yang-Tsze Insurance Assn.*, 242 U. S. 430, 434.

assistance of a lawyer in preparing and filing a petition for certiorari as he is in the handling of an appeal as of right. In many appeals, an articulate defendant could file an effective brief by telling his story in simple language without legalisms, but the technical requirements for applications for writs of certiorari are hazards which one untrained in the law · could hardly be expected to negotiate.

" 'Certiorari proceedings constitute a highly specialized aspect of appellate work. The factors which [a court] deems important in connection with deciding whether to grant certiorari are certainly not within the normal knowledge of an indigent appellant. Boskey, The Right to Counsel in Appellate Proceedings, 45 Minn. L. Rev. 783, 797 (1961) (footnote omitted).' " 483 F. 2d, at 653.

Furthermore, the lawyer who handled the first appeal in a case would be familiar with the facts and legal issues involved in the case. It would be a relatively easy matter for the attorney to apply his expertise in filing a petition for discretionary review to a higher court, or to advise his client that such a petition would have no chance of succeeding.

*Douglas* v. *California* was grounded on concepts of fairness and equality. The right to seek discretionary review is a substantial one, and one where a lawyer can be of significant assistance to an indigent defendant. It was correctly perceived below that the "same concepts of fairness and equality, which require counsel in a first appeal of right, require counsel in other and subsequent discretionary appeals." *Id.*, at 655.