Wayne H. BROOKS, alias Lawrence Brooks, Petitioner,

v.

Mr. Ralph EDWARDS, Commissioner, North Carolina Department of Correction, and Mr. Gene Cousins, Superintendent, Subsidiary 4635, Respondents.

No. C–C–74–64.

United States District Court,
W. D. North Carolina,
Charlotte Division.

Sept. 26, 1974.

Richard N. League, Asst. Atty. Gen., N. C. Dept. of Justice, Raleigh, N. C., for respondents.

## ORDER

McMILLAN, District Judge.

Wayne H. Brooks (better known to this court through the years as Lawrence Brooks) is in the North Carolina Central Prison, serving a ten-year sentence imposed upon him in Gaston County Superior Court on December 9, 1971, after conviction by a jury of possessing burglary tools. Brooks in seeking habeas corpus makes four claims:

■ 1. He claims that North Carolina has broken an agreement that if he would waive extradition to Florida, North Carolina would *nol pros* the North Carolina charges against him. Such an agreement was made and Brooks signed a waiver of extradition. However, the prosecutor changed his mind; Brooks was not sent to Florida but was tried and convicted in North Carolina instead. The state's breach of the agreement no doubt renders the waiver of extradition invalid and may be a reprehensible action by the prosecutor. However, since Brooks has not changed position nor given up anything in fact by signing the waiver of extradition, it does not appear that the failure to keep the bargain has caused him any damage of constitutional significance sufficient to require a reversal of the conviction.

■ 2. He claims that the state used false testimony against him in violation of due process of law and equal protection of laws. This objection has no substance. Part of it is a quibble over the officer's terminology in which he referred to a tire tool as a wrecking bar. The other part is addressed to the officer's testimony that the light colored Thunderbird that he saw disappearing behind a Winn-Dixie store in a parking lot at 4:00 A.M. was the same car as a light colored Thunderbird that he saw reappear a few moments later. Contradictions and discrepancies in testimony of witnesses are ordinarily for resolution by jurors and trial courts, and the ones alleged by Brooks do not rise to constitutional stature, *Grundler* v. *North Carolina,* 283 F.2d 798 (4th Cir. 1960).

■ 3. He complains of denial of due process and equal protection in that the grand jury and the petit jury were illegal because of the requirement of the North Carolina Constitution, Article VI, Section 8, that all qualified jurors must believe in God. This claim, if valid, cannot be considered here because state remedies have not been exhausted.

4. Brooks' most serious claim is that he was denied equal protection of laws by the state's failure to provide a free transcript of the testimony at his preliminary hearing, so that he could have it for later use at the trial. He says he requested that a record be made but that the judge who conducted the hearing refused the request. The state denies this assertion, but the denial proclaims lack of information sufficient to form a belief. For purpose of this order it will be assumed that the motion was made.

■ The defendants claim the motion, if made at the preliminary hearing, was not timely because it was not presented early enough to enable the state to procure a reporter. The state also argues that Brooks was neglectful because he did not have a reporter waiting in the wings to take the testimony in case the court allowed his motion. No authority in support of those assertions is cited. Such a motion should be considered timely even though not made until the day of the hearing.

Brooks contends that a preliminary hearing is a "critical stage" in the prosecution. In that contention he is supported by *Coleman* v. *Alabama,* 399 U.S. 1, 90 S.Ct. 1999, 26 L.Ed.2d 387 (1970).

Brooks also contends that his right to a transcript is supported by *Griffin* v. *Illinois,* 351 U.S. 12, 76 S.Ct. 585, 100 L. Ed. 891 (1956), where the Supreme Court held that an indigent defendant is entitled to a free transcript of his criminal trial for purposes of appeal. The *Griffin* case, *Lane* v. *Brown,* 372 U.S.

477, 83 S.Ct. 768, 9 L.Ed.2d 892 (1963), *Draper* v. *Washington*, 372 U.S. 487, 83 S.Ct. 774, 9 L.Ed.2d 899 (1963), *Douglas* v. *California*, 372 U.S. 353, 83 S.Ct. 814, 9 L.Ed.2d 811 (1963), and *Britt* v. *North Carolina*, 404 U.S. 226, 227, 92 S. Ct. 431, 30 L.Ed.2d 400 (1971), all recognize the basic principle that a man's capacity to protect his constitutional rights should not depend upon the thickness of his pocketbook. (*Ross* v. *Moffitt*, 417 U.S. 600, 94 S.Ct. 2437, 41 L. Ed.2d 341 (1974), may be an "apparent only" exception, because a discretionary appeal by way of certiorari is apparently not yet a constitutional right.) *Britt* v. *North Carolina*, 404 U.S. 226, 227, 92 S. Ct. 431, 433, 30 L.Ed.2d 400 (1971) succinctly states the constitutional mandate:

> "*Griffin* v. *Illinois* and its progeny establish the principle that the State must, as a matter of equal protection, provide indigent prisoners with *the basic tools of an adequate defense* or appeal, *when those tools are available for a price to other prisoners.*" (Emphasis added.)

■ Where transcripts of preliminary hearings are made as a matter of course, the state may not withhold them from a criminal defendant simply because he cannot pay the transcript fee, *Roberts* v. *LaVallee, Warden*, 389 U.S. 40, 88 S.Ct. 194, 19 L.Ed.2d 41 (1967), where the Court said:

> "Our decisions for more than a decade now have made clear that differences in access to the instruments needed to vindicate legal rights, when based upon the financial situation of the defendant, are repugnant to the Constitution." *Id.*, at 42, 88 S.Ct. at 196. See also *Little* v. *Turner*, 402 F.2d 495 (10th Cir. 1968).

■ North Carolina General Statutes § 15–88 on its face requires that preliminary hearings be transcribed. However, the North Carolina Supreme Court in *State* v. *Bass*, 280 N.C. 435, 186 S.E. 2d 384 (1972) held this statute to be directory instead of mandatory! Transcripts, therefore, in North Carolina practice, are available only to people who can pay for them and who do make advance arrangements with court reporters.

A transcript of the preliminary hearing can be of great value. The preliminary hearing is the first exposure of the prosecution's case. In practice witnesses are less well prepared than at the Superior Court trial stage. In practice the prosecuting attorney is less well prepared and the testimony is more spontaneous, ingenuous and less studied. The transcript of this evidence provides a basis for attempting to hold witnesses to previous statements or admissions. It also may provide information so that later employed counsel, knowing what was actually said at the hearing, can give the defendant much more pragmatic advice as to his prospects in the later Superior Court trial on the merits. The use of recorded testimony to cross-examine with reference to prior inconsistent statements is an everyday phenomenon which is not entirely confined to Congressional hearings. It is obvious that the transcript is a "basic tool" which should not be denied the defendant simply because he cannot pay for it.

It may well be that a transcript of a preliminary hearing is more important than a transcript of the trial itself; until convicted an accused is theoretically presumed innocent, and even small disadvantages can be critical, whereas after the trial that presumption has been dispelled and the use of a trial transcript may be of far less value to the accused.

■ The defendants contend that there is no constitutional right to a preliminary hearing. That may be so, although the question has yet to be finally determined. *See Pugh* v. *Rainwater*, 483 F.2d 778 (5th Cir. 1973), *cert. granted sub nom. Gerstein* v. *Pugh*, 414 U.S. 1062, 94 S.Ct. 567, 38 L.Ed.2d 467 (1973). However, once the state adopts a procedure valuable for the vindication of legal rights, it cannot deny that right

simply because the accused can't afford to pay the bill.

It was implied that the state might abolish preliminary hearings rather than provide free transcripts for indigent defendants. The North Carolina I have known is not so callous to the constitutional rights of its citizens; I refuse to believe that this state will insist that preliminary hearings be conducted unfairly for indigents or not at all! In any event, that suggestion has nothing to do with this case.

■ It appears obvious that, unless the entire sense of all these Supreme Court decisions is to be disregarded: (1) a preliminary hearing is a critical stage of the prosecution; (2) the rights of a defendant at such hearing must not depend upon his ability to pay for a court reporter's services; (3) a transcript of what is said at the hearing is a "basic tool" of defense of a criminal proceedings; and (4) an indigent defendant has the right to have the testimony recorded and transcribed upon request.

■ Therefore, the denial of the requested transcript was error of constitutional magnitude, and if it were harmful it might in a proper case produce a new trial or a reversal or other proper relief.

However, the error in this case appears to be harmless. The purpose for which Brooks wanted to use the prior evidence was to impeach Officer Howard by showing Howard's prior allegedly inconsistent statements at the preliminary hearing as to (a) his lack of prior acquaintance with Brooks, and (b) the factual circumstances of the arrest.

The alleged discrepancy as to prior acquaintance hardly seems material. The alleged discrepancies in the testimony as to the circumstances of the arrest also seem immaterial. The testimony of Howard on that subject at the trial was not given before the jury but was before the court only, in the absence of the jury. Howard was *not* asked in this *voir dire* examination about his allegedly

inconsistent prior statements at the preliminary hearing. It is not unfair to suggest this failure to ask about discrepancies known to Brooks was a valid waiver of the impeaching questions. The judge found the arrest to be legal. The chief question before the jury was not the legality nor even the circumstances of the arrest but whether the tools found in Brooks' car were "burglary tools" within the criminal statute. The tools were in court for the jury to see.

■ Not all constitutional errors require reversal or new trial. Justice Douglas pointed out in *Harrington* v. *California,* 395 U.S. 250, 254, 89 S.Ct. 1726, 1728, 23 L.Ed.2d 284 (1969), that:

"Our judgment must be based on our own reading of the record and on what seems to us to have been the probable impact of [the error] on the minds of an average jury."

And the unanimous court in *Brown* v. *United States,* 411 U.S. 223, 231–32, 93 S.Ct. 1565, 1570, 36 L.Ed.2d 208 (1973), reminds us that

" '[A] defendant is entitled to a fair trial but not a perfect one,' for there are no perfect trials."

This is not an entirely satisfactory decision. Perhaps we face the same amorphous problem as that already revealed in the cases about the indigent defendant's showing of "need" for a trial transcript for appeal purposes. *See Huey* v. *North Carolina,* 364 F.Supp. 447 (W.D. N.C.1973). I see no valid reason to have a different showing required at one "critical stage" than at another "critical stage" of the prosecution.

Nevertheless, absent a showing that denial of the right to a transcript produced harm, there is no occasion to explore the possible remedies for that denial.

All claims are denied and this petition for writ of habeas corpus is dismissed.

Petitioner is advised that he may appeal by forwarding a written notice of appeal to the Clerk of United States Dis-

trict Court, Post Office Box 1266, Charlotte, North Carolina 28201. Said *written* notice of appeal must be *received* by the Clerk within thirty days from the date of entry of this *final order*. The court declines to issue a certificate of probable cause.