## CIRCUIT COURT OF THE CITY OF ROANOKE

Howard Frank Neal

v.

Commonwealth's Attorney
of the City of Roanoke

January 3, 2003

Case No. CL02000936

BY JUDGE CLIFFORD R. WECKSTEIN

Howard F. Neal, who was convicted in 1993 of statutory burglary and attempted grand larceny, returns to the trial court pursuant to 2001 legislation. By motion filed on September 6, 2002, he seeks (a) a new scientific investigation of human biological evidence related to the case, pursuant to Virginia Code § 19.2-327.1; and (b) storage, preservation and retention of human biological evidence collected in the case, under Code § 19.2-270.4:1. For reasons that follow, the court grants the second motion but denies the first.

Convicted in a bench trial, Neal was sentenced on March 16, 1993. He unsuccessfully appealed and, also without avail, sought collateral relief in both state and federal court. The record in the underlying criminal case, Case No. CR 92-1388, is incorporated in these proceedings. (Judge Diane McQ. Strickland, who presided in the case, retired from active service on October 31, 2002.)

*Motion for Scientific Analysis*

Petitioner Neal (sometimes herein referred to as "defendant," the position he held at trial) seeks new scientific testing of hair samples. He contends that advanced DNA hair-sample testing, now conducted by the Division of

Forensic Science, but not available at the time of trial, could eliminate him as the person whose hairs were found in and around the crime victim's bed.

The pertinent provisions of Code § 19.2-327.1 provide that any felon may ask the court in which he or she was convicted to order "a new scientific investigation of any human biological evidence related to the case that resulted in the felony conviction," if the court is satisfied by clear and convincing evidence that "the testing is materially relevant, noncumulative, and necessary and may prove the convicted person's actual innocence," and that at the time the conviction became final in the trial court, the evidence had not been tested "because the testing procedure was not available at the Division of Forensic Science;" and there is a sufficient chain of custody "to establish that the evidence has not been altered, tampered with, or substituted;" and "the testing requested involves a scientific method employed by the Division of Forensic Science; and the convicted person has not unreasonably delayed the filing of the petition after the evidence or the test for the evidence became available at the Division of Forensic Science."

In accordance with the provisions of § 19.2-327, once Neal's motion was received and filed by the Clerk,[1] a copy was served on the Attorney for the Commonwealth. The statute requires that the motion be heard no fewer than thirty, nor more than ninety, days after filing. The court accordingly heard the matter on December 4, 2002. The Commonwealth was represented by Ann Gardner, Senior Assistant Commonwealth's Attorney; the defendant, who is incarcerated, was not present.

The trial record requires the court to find, as I do, that the defendant fails to state a claim upon which relief can be granted: Scientific testing cannot "*prove* the convicted person's actual innocence." (Emphasis added.) The

---

[1] The petition is dated July 22, 2002. On August 28, 2002, the Clerk wrote to Neal, explaining that he was returning to Neal the motion and supporting documentation "that you recently mailed to this office." "This office will be glad to place it on the active docket of this Court," the Clerk wrote, "when it is returned with the proper filing fee of $66.00 or, if appropriate, an affidavit of indigence." Neal paid the filing fee. Subsection H of § 19.2-327.1 provides that "In any petition filed pursuant to this chapter, the defendant is entitled to representation by counsel subject to the provisions of Article 3 (§ 19.2-157 et seq.) of Chapter 10 of Title 19.2." Code §§ 19.2-157 et seq. provide for appointment of counsel for indigent persons. No attorney has appeared for the defendant, who has not submitted an indigency affidavit in this case. Apparently, Neal mailed a similar request to the Clerk in February of 2002. That request was filed with the papers in the ended criminal case, the Commonwealth made no response, and the court made no ruling. In his September petition, Neal does not refer to the earlier filing.

requested testing thus is neither materially relevant nor necessary, though it would be noncumulative.

Since scientific testing could not prove Neal's innocence, the Court need not determine whether the statute's other requirements have been met. *See Strickland v. Washington*, 466 U.S. 668, 697, 80 L. Ed. 2d 674, 700, 104 S. Ct. 2052 (1984). Without dispute from the Commonwealth, the court will conclude, for present purposes, that Neal seeks testing, not available in 1992-1993, which involves a scientific method now employed by the Division of Forensic Science; that this petition was filed without unreasonable delay; that any formal defects in the petition could be cured; and (without finding and without evidence or proffer of evidence) that the hair sample evidence still exists, and that it has not been altered, tampered with, or substituted. Neal's other motion, discussed below, seeks to assure that the evidence is preserved.

Exhibit 2, admitted in evidence in Neal's trial by stipulation, is a Certificate of Analysis that shows that "Hairs and/or fibers" from a T-shirt, a bedsheet, and pillow cases were submitted for laboratory examination. The defendant apparently is African-American. The victim of the crimes for which he was prosecuted apparently is Caucasian. According to the Certificate of Analysis "no Negroid hairs were present in the 'hairs and/or fibers' from the pillow cases"; from the T-shirt, "one characteristically Negroid hair fragment of no value for meaningful comparison purposes was present"; from the bedsheet, two "characteristically Negroid hair fragments of no value for meaningful comparison purposes were present."

Neal's direct appeal challenged the sufficiency of the evidence. In its order denying the appeal, the Court of Appeals mistakenly stated that, "an African-American hair *matching the defendant's* [was] found on Mrs. Butz's [the victim's] bed sheet." (Emphasis added.) *Neal v. Commonwealth*, Record No. 0643-93-3, June 10, 1994. The record demonstrates that Neal is absolutely correct in stating that there is no evidence that hairs which matched his were found at the crime scene.

There are other reasons, however, to conclude, as did the Court of Appeals, that the evidence was "sufficient to sustain the defendant's convictions for burglary and attempted robbery."

First, Mrs. Butz's identification of the defendant was reliable. Mrs. Butz had an opportunity to know the defendant's voice because for a month prior to the burglary she had numerous conversations with him about her yard work. One conversation lasted around thirty minutes. On the night of the burglary when Mrs. Butz heard "give me money", she immediately recognized the voice as belonging to the

defendant. The words, upon which the identification was based, were spoken directly in her ear. Mrs. Butz immediately gave the police the defendant's name at the crime scene. She testified at trial unequivocally concerning her certainty of defendant's identity, and her demeanor in giving that testimony was the subject of comment by the trial judge [who was the trier of fact]. ... The sufficiency of the evidence to establish identity is a question for the trier of fact. The fact finder accepted Mrs. Butz's identification of the defendant. "The weight which should be given to evidence and whether the testimony of the witnesses credible or questions which the fact finder must decide." ... .

Second, the circumstantial evidence in this case leaves no reasonable hypothesis of innocence. ... The defendant's wet T-shirt, along with a vegetable peeler, was found outside the Butz's bedroom door on the night of the crime when it was raining. The defendant knew where Mrs. Butz's money was located and the layout of the Butz's home. He had used tools from the Butz's basement. He had the motive.

*Id.* (citations omitted). Though Neal espouses a different view of the weight and effect of the evidence, familiar principles of appellate review required the Court of Appeals to examine the evidence in the light most favorable to the Commonwealth, the party which prevailed in the trial court, and to give the Commonwealth the benefit of all reasonable inferences that fairly could be drawn from the evidence. *See King v. Commonwealth*, 264 Va. 576, 578, 570 S.E.2d 863 (2002). A court conducting a collateral review applies essentially the same standards. *See Herrera v. Collins*, 506 U.S. 390, 398, 113 S. Ct. 853, 122 L. Ed. 2d 203 (1993); *Ross v. Moffitt*, 417 U.S. 600, 610, 41 L. Ed. 2d 341, 94 S. Ct. 2437 (1974).

In order for Neal to prevail on this motion, the court would have to find that if DNA hair-sample tests were performed, and the result of those tests was totally favorable to Neal, then it is more likely than not that, in light of this new evidence, no reasonable juror would vote to convict. *See Schlup v. Delo*, 513 U.S. 298, 327 (1995); *Calderon v. Thompson*, 523 U.S. 538, 559-60 (1998). The statute under which Neal proceeds requires any order for scientific testing to be supported by clear and convincing evidence.

As the defendant acknowledges in his motion, Judge Strickland, the trier of fact in his case, specifically stated that she gave "no weight" to the analysis of the hair fragments, which "merely raises the possibility that any one of thousands of persons of Negro background or characteristics residing or

traveling through the Roanoke Valley area could have been responsible for the hair fragments." Trial transcript at 94. I find as a matter of fact that the most favorable result that could be obtained from new DNA testing — analysis proving that the hairs found on the T-shirt and bedsheet were neither Neal's nor the victim's — would not "prove the convicted person's actual innocence," as Code § 19.2-327.1 requires; there is not "clear and convincing evidence that the requirements of subsection A [of that statute] have been met." Therefore, the court denies the motion for scientific testing.

### Motion for Preservation and Retention of Scientific Evidence

The requirements of § 19.2-270.4:1 are different from those of § 19.2-327.1. Under § 19.2-270.4:1, "upon motion of a person convicted of a felony but not sentenced to death," the circuit court in which he was convicted "*shall* order the storage, preservation, and retention of specifically identified human biological evidence or representative samples collected or obtained in the case for a period of up to fifteen years from the time of conviction, unless the court determines, in its discretion, that the evidence should be retained for a longer period of time." (Emphasis added.)

"[W]hen the word 'shall' appears in a statute it is generally used in an imperative or mandatory sense." *Schmidt v. City of Richmond*, 206 Va. 211, 218, 142 S.E.2d 573, 578 (1965); *Crawford v. Commonwealth*, 23 Va. App. 661, 667, 479 S.E.2d 84 (1996) (*en banc*). Neal, who has been convicted of a felony but not sentenced to death, has identified the evidence he seeks to preserve. By the plain language of § 19.2-270.4:1, he is entitled to the relief sought. The court will therefore enter an order directing the storage, preservation, and retention, for a period of fifteen years from the time of conviction, of human biological evidence collected in connection with Neal's 1993 convictions for statutory burglary and attempted grand larceny, and identified as follows: FS Lab # W92-03217, Item 1: "Hairs and/or fibers" from T-shirt; Item 2: "Hairs and/or fibers" from bedsheet; Item 3: "Hairs and/or fibers" from pillowcases; and Item 4: Head hair sample and pubic hair sample from Howard Frank Neal.

The order that will be entered will require the Clerk of the Circuit Court of the City of Roanoke forthwith to determine if the evidence is in his custody. If so, he must conduct an inventory of the evidence in his custody in accordance with the standards and guidelines established by the Division of Forensic Science (DFS) and then transfer the evidence in his custody to the Roanoke City Police Department, to be transferred to the DFS. The order also will direct that the Roanoke City Police Department inventory any evidence

described above in its possession, whether received from the Clerk or otherwise, package and seal such evidence in accordance with the standards and guidelines established by the DFS, and transmit such evidence to the DFS in a manner that meets the DFS's standards. The Court further will order that all evidence must be transferred in such a manner as to preserve a satisfactory chain of custody, and that all steps taken in preserving and transferring such evidence shall protect the integrity of the evidence.