J-S57043-16

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| MICHAEL J. STEPHANIC, JR., | : | |
| | : | |
| Appellant | : | No. 327 WDA 2016 |

Appeal from the Judgment of Sentence October 21, 2015
in the Court of Common Pleas of Elk County
Criminal Division at No(s): CP-24-CR-0000388-2013

BEFORE:    FORD ELLIOTT, P.J.E., SHOGAN, and STRASSBURGER,* JJ.

MEMORANDUM BY STRASSBURGER, J.:        **FILED SEPTEMBER 07, 2016**

Michael J. Stephanic, Jr. (Appellant) appeals from his judgment of sentence of life imprisonment following his conviction of first-degree murder. We affirm.

In the early hours of September 3, 2013, after a day of arguments (including one for which police were summoned) and alcohol consumption, Appellant shot and killed his paramour, June Talmadge, at Eastern Sintered Alloys, their mutual place of employment.  After hearing from numerous witnesses, including Appellant, and being instructed on murder of the first and third degrees, voluntary manslaughter, and voluntary intoxication, a jury found Appellant guilty of first-degree murder on August 6, 2015. Appellant subsequently was sentenced to life imprisonment.

_____
*Retired Senior Judge assigned to the Superior Court.

By order filed on October 30, 2015, Appellant's privately-retained counsel was permitted to withdraw, and a public defender was appointed. Following the denial of timely-filed post-sentence motions, Appellant timely filed a notice of appeal. Both Appellant and the trial court complied with Pa.R.A.P. 1925.

Appellant presents one issue on appeal: whether the trial court erred in denying Appellant's pre-trial request "for the appointment of, and court authorization from county funds for the payment of, an expert neuro-pharmacologist to conduct relation back evaluations of the potential blood alcohol concentrations of [Appellant] at the time of shooting the victim" and to offer "expert evidence at trial as to [Appellant's] level of intoxication and its effects upon [Appellant's] behaviors and cognitive reasoning at relevant times" in order to assert his defense of voluntary intoxication. Appellant's Brief at 4.

> It is well-established that indigent defendants have a right to access the same resources as non-indigent defendants in criminal proceedings. The state has an affirmative duty to furnish indigent defendants the same protections accorded those financially able to obtain them. Procedural due process guarantees that a defendant has the right to present competent evidence in his defense, and the state must ensure that an indigent defendant has fair opportunity to present his defense.

***Commonwealth v. Konias***, 136 A.3d 1014, 1019 (Pa. Super. 2016)

However, "the Commonwealth is not obligated to pay for the services of an expert simply because a defendant requests one. There must be some

showing as to the content and relevancy of the proposed expert testimony before such a request will be granted." ***Commonwealth v. Curnutte***, 871 A.2d 839, 842 (Pa. Super. 2005) (citations omitted).

Factors the trial court should consider in making a case-by-case evaluation of a request for an appointed expert include the probable costs of the expert's services, "present or past salary and wages, other types of income within the preceding year, other contributions for household support, property owned, available assets, debts and obligations, and persons dependent for support." ***Commonwealth v. Cannon***, 954 A.2d 1222, 1226-27 (Pa. Super. 2008) (some internal quotation marks and citations omitted).

"Appointment of expert witnesses and the provision of public funds to hire them to assist in the defense against criminal charges are decisions within the trial court's sound discretion and will not be reversed absent an abuse thereof." ***Commonwealth v. Wholaver***, 989 A.2d 883, 894 (Pa. 2010).

In his pretrial motion, Appellant sought the appointment of a private investigator, a forensic psychologist, and a neuropharmacologist. Omnibus Pretrial Motion, 1/29/2014, at ¶¶ 29-49. Regarding the neuropharma-cologist, Appellant averred:

> 42. That [Appellant] was consuming copious amounts of alcohol in the hours leading up to [the shooting].

43.   That numerous witnesses described an odor of alcoholic beverage emanating from [Appellant's] breath and person.

44.   That numerous witnesses described [Appellant] to be potentially intoxicated and to behaving in an irrational and illogical state.

45.   That [Appellant] is believed to have been severely intoxicated during the events in question[].

46.   That intoxication sufficient to deprive an individual of the specific intent to kill is a viable defense in a first[-]degree homicide case.

47.   That [Appellant] wishes to retain the services of a neuropharmacologist to conduct relation[-]back evaluations of the potential blood alcohol concentration and to proffer expert evidence as to his level of intoxication and its effects on his behavior and cognitive reasoning.

*Id.* at ¶¶ 42-47.

The trial court held a hearing on Appellant's pretrial motions, at which Appellant testified to his lack of assets and income and to his family's paying the $10,000 retainer for his private counsel; Appellant did not indicate whether he had debts or other obligations, or whether he had other sources of money for contributing to his expenses.  N.T., 4/3/2014, at 37-43. Following Appellant's testimony, counsel stated as follows:

So far as the request for appointments here, Your Honor, there's a number of circumstances, events that led up to what Your Honor heard as far as what took place at Eastern Sintered Metals.  There was a relationship between these parties, [a] somewhat volatile one.  There [were] domestic incidents earlier in the day that resulted in the police response from the very same police department [that arrested Appellant after the shooting].  There were witnesses who undoubtedly saw these

individuals out and about during the course of the day, particularly the number of local drinking establishments.

I need an investigator to speak with these various witnesses. There are individuals who made 911 reports relative to this domestic incident. I need an investigator to speak to them. …

* * *

Insofar as the neuropharmacology expert, Your Honor, in this instance we have evidence of [Appellant] and the victim to some extent consuming copious amounts of alcohol. And Your Honor well knows, voluntary intoxication can be a defense as to first-degree murder. I would like to have some type of relation-back testimony here based upon large amounts of alcohol that were consumed by [Appellant] to try to ascertain whether or not that could provide us with a potential defense. And as Your Honor's well heard, he lacks the resources to do so.

*Id.* at 48-50.

The trial court initially denied all of Appellant's appointment requests, but, after Appellant moved for reconsideration, it allotted $2,500 for the appointment of a private investigator. The court offered the following explanation for its decision to continue to reject Appellant's other requests:

During the portion of the April 3, 2014 hearing on [Appellant's] omnibus pretrial motions when [Appellant's] motions for appointment were considered, [Appellant] initially did not intend to present any evidence in support of his appointment motions. It was only after prompting by the [c]ourt that the testimony of [Appellant] was offered regarding his assets and general financial condition but tellingly, there was no evidence presented as to the nature, scope or anticipated expense as to why a psychiatrist or neuropharmacologist may be needed other than the bald assertion that there might be some need to have [Appellant] evaluated even though [he] presented no prior psychiatric or psychological history. Additionally, while defense counsel promoted that alcohol may have been involved

with the alleged criminal acts, including homicide, there was no competent evidence which developed this position. The basis for the retention of a psychiatric or neuropharmacological expert to be paid from the public coffers when [Appellant] has retained private counsel was not established by a showing of the relevancy and content of the proposed experts sought to be hired. Instead, it was acknowledged that defense counsel had been privately retained and that the payment of any necessary experts may have to be ultimately borne by [Appellant]. The requisite evidentiary nexus warranting the payment of public funds to retain expert witnesses has not been presented.

Order, 7/14/14, at 1-2 (pages unnumbered).

In arguing on appeal the evidence showing the need for an expert neuropharmacologist, Appellant largely discusses the testimony that was ultimately offered at trial, not the evidence that was before the trial court when it denied Appellant's request. *See* Appellant's Brief at 18-22 (citing the trial testimony of numerous witnesses, including Appellant, and that a breath test taken at 7:00 am estimated Appellant's blood alcohol content to be .128). In addressing Appellants reliance on the trial evidence, the trial court responded as follows:

At no time prior to trial, however, was the relevance and content of the proposed neuropharmacologist evaluation developed. No evidence of any breath test or blood test result was referred to let alone introduced into evidence prior to trial and moreover the pretrial evidence relating to [Appellant's] having consumed alcohol was tenuous at best. There was no evidence introduced at the time of the omnibus hearing supporting [Appellant's] motion for the appointment of a neuropharmacologist. Instead, the attorney for [Appellant] baldly argued that there was evidence of [Appellant] and the victim consuming copious amounts of alcohol to an undefined extent as demonstrated in … the transcript of the preliminary hearing held before the Honorable Mark S. Jacob of Magisterial

District 59-3-03 on November 15, 2013. A review of that transcript, however, does not support [Appellant's] position. Robert Nissel, a supervisor at Eastern Sintered Alloys, testified that when he spoke to the victim on September 2, 2013, the victim had indicated that she and [Appellant] "had a little scuffle, he was drinking." Jim Rocha, a security guard at Eastern Sintered Alloys, testified that when he observed [Appellant] on the evening of September 2, 2013, between 9:45 p.m. or 10:00 p.m., [Appellant] did not appear intoxicated. St. Marys Police Officer Peter Largey testified that when he questioned [Appellant] on September 3, 2013, about a wrecked white van found in the woods across the road from Eastern Sintered Alloys earlier that night, [Appellant] relayed that he had been at his residence "since the police were there earlier in the night because he had been drinking." Officer Largey also testified on cross examination that he smelled alcohol on [Appellant], but did not recall observing any bottles or cans of beer at [Appellant's] residence while there to question [him] about the van in the woods.

In short, the evidence fell far short of indicating that [Appellant] had consumed "copious amounts of alcohol," and in the absence thereof, entirely failed to suggest or establish how an expert witness would be necessary or even helpful in establishing any defense based on consumption of alcohol. The United States Supreme Court "has not held that a State must purchase for the indigent defendant all the assistance that his wealthier counterpart might buy, *see Ross v. Moffitt*, 417 U.S. 600[] (1974)," but instead has "focused on identifying the 'basic tools of an adequate defense or appeal,' *Britt v. North Carolina*, 404 U.S. 226[] (1971), and we have required that such tools be provided to those defendants who cannot afford to pay for them." *Ake v. Oklahoma*, 470 U.S. 68 (1985).

It is again noteworthy that in the year between the denial of [Appellant's] request for the appointments of a forensic psychologist and neuropharmacologist, no further requests were made even though an allowance was granted for a private investigator to assist in uncovering information which may have been of some assistance to [Appellant]. If relevant information was available to develop additional evidence about [Appellant's] … having imbibed alcoholic beverages prior to the murder, there was ample opportunity to do so. Instead, the generic,

- 7 -

nonspecific bases for the requests of [Appellant] were not developed. Additionally, there was no indication as of April 2014 that the funds paid to retain [trial counsel] were not at least in part able to be expended on defense costs such as expert reports nor was there any evidence that no additional funds were provided to [Appellant's] private counsel by him, his family or any other third party after April 3, 2014, the date of hearing on [his] omnibus pretrial motions. While [Appellant] was initially determined to be indigent and has again been found to be indigent, during the proceedings which are material to his post-sentence motions, [Appellant] was represented by a private attorney who received a retainer sufficient to enter his appearance on [Appellant's] behalf, which in turn led to the withdrawal of [his] public defender….

Not only did the Court have to pry some evidentiary presentation from [Appellant's] counsel at the April 3, 2014 hearing to support the barren contention that some experts might be needed to develop defenses, but the [c]ourt also afforded [Appellant] the ability to hire an investigator to delve into issues relating to [his] … intake of alcohol during September 2 and 3, 2013. Despite the passage of more than one year, no information was forthcoming nor were the requests for funds to retain any experts reasserted. There was also no reference during trial that [Appellant] was thwarted in any way from promoting a defense even tangentially related to … the amount of alcohol he may have imbibed.

In short, [Appellant] was afforded the means to advance and present an adequate defense and the appointment of a forensic psychologist or neuropharmacologist was not developed or demonstrated to be necessary to assure [Appellant's] rights.

Trial Court Opinion, 2/24/2016, at 5-7 (some citations omitted).

Upon review, the trial court's factual assertions are supported by the record. Further, from the above discussion it is clear to this Court that the trial court thoroughly considered the applicable law and made no error in its application. Appellant was not entitled to appointment of at the county's

expense a neuropharmacologist simply because he requested one. *Curnutte*, 871 A.2d at 842. Rather, he had the burden to show that such an expert was necessary for him to present an adequate defense, how much retaining the expert would cost, and that he was unable to pay for that necessary expert. *Konias*, 136 A.3d at 1019; *Cannon*, 954 A.2d at 1227 ("Cannon failed to introduce any evidence as to the cost of retaining an expert to conduct an evaluation and to testify on his behalf. This is a critical element of proof in a claim of indigency."). The trial court found that Appellant established none of these prerequisites.

For the above-quoted reasons offered by the trial court, we hold that the court did not abuse its discretion in denying Appellant's request for the appointment of a neuropharmacologist based upon the record before it at the time of Appellant's request.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.

Prothonotary

Date: 9/7/2016