Francisco MATA, Petitioner,

v.

Charles E. EGELER, Warden,
Respondent.

Civ. A. No. 4–71519.

United States District Court,
E. D. Michigan, S. D.

Oct. 23, 1974.

Francisco Mata, in pro per.

Michael T. Materna, Asst. Atty. Gen.,
Crim. Div., Frank J. Kelley, Atty. Gen.,
Lansing, Mich., for respondent.

## MEMORANDUM OPINION

JAMES HARVEY, District Judge.

This is a petition for a writ of habeas corpus, 28 U.S.C. § 2254, filed in pro per by Francisco Mata, an inmate of the State Prison of Southern Michigan at Jackson.

On February 8, 1971, petitioner Francisco Mata, an indigent represented by court appointed counsel, pleaded guilty to second degree murder in the Circuit Court for the County of Muskegon, Michigan. On February 26, 1971, the trial judge sentenced Mata to a term of imprisonment of not less than fifteen (15) nor more than twenty-five (25) years. Immediately after sentencing, as required by Michigan General Court Rule [GCR] 785.11, petitioner received and signed a form describing his rights on appeal. This form stated, *inter alia,* that if petitioner appealed, he had as an indigent a right to appointed counsel provided he requested such assistance within sixty (60) days of entry of judgment. In July 1972, fourteen (14) months after expiration of his 60-day period, petitioner requested, *inter alia,* appointed counsel to perfect his application for leave to appeal. Because petitioner's request was not timely under GCR 785.11, the Michigan Court of Appeals and the Michigan Supreme Court both affirmed the trial judge's denial of this request. Petitioner has also been denied a copy of his presentence investigative report. Having exhausted his state remedies, petitioner has sought relief in this court. Respondent has countered with a motion to dismiss.

### I.

Under Douglas v. California, 372 U.S. 353, 83 S.Ct. 814, 9 L.Ed.2d 811 (1963),

once a state grants appellate review, it must furnish indigents with counsel on their first appeal as of right. The Constitution of the State of Michigan grants appeal as of right to every convicted defendant provided he appeals within sixty (60) days of entry of judgment. Mich.Const., Art. I, § 20 (1963). But by court rule, if a Michigan defendant files his appeal after the 60-day period, his appeal as of right is lost; he must obtain leave to appeal under GCR 803.3, which provides:

> "After expiration of the period for timely appeal, the Court of Appeals may, in its discretion, grant leave to appeal from any order or judgment from which timely appeal would have been available either as of right or by leave, upon showing, supported by affidavit, that there is *merit in the grounds for appeal* and that the *delay was not due to appellant's culpable negligence*." (Emphasis added.)

Under this two-tiered test, petitioner must show he was not negligent in failing to file a timely appeal; otherwise, the Court of Appeals will not listen to his legal arguments. Moreover, under GCR 785.11 failure to make a timely request for appellate counsel terminates the indigent's right to counsel.

Petitioner, an indigent, challenges on due process and equal protection grounds the state's authority to deny him counsel on his *first appeal*—where such appeal is *discretionary*.

The United States Supreme Court has given extensive consideration to the rights of indigents on appeal. Since Griffin v. Illinois, 351 U.S. 12, 76 S.Ct. 585, 100 L.Ed. 891 (1956), the court has consistently invalidated state-imposed financial barriers to the appellate process. *See, e. g.,* Lane v. Brown, 372 U.S. 477, 83 S.Ct. 768, 9 L.Ed.2d 892 (1963); Draper v. Washington, 372 U.S. 487, 83 S.Ct. 774, 9 L.Ed.2d 899 (1963); Burns v. Ohio, 360 U.S. 252, 79 S.Ct. 1164, 3 L.Ed.2d 1209 (1959). In the landmark case of Douglas v. California, *supra,* the court held that denying indigents' counsel on their first appeal of right was a financial barrier to the appellate process. The court reasoned:

> "In Griffin v. Illinois, we held that a State may not grant appellate review in such a way as to discriminate against some convicted defendants on account of their poverty. There, as in *Draper v. Washington,* the right to a free transcript on appeal was at issue. Here the issue is whether or not an indigent shall be denied the assistance of counsel on appeal. In either case the evil is the same: discrimination against the indigent." (Citations omitted.) 372 U.S. at 355, 83 S.Ct. at 815.

The court in Douglas, however, confined its opinion to the first appeal taken as a matter of right:

> "We are not here concerned with the problems that might arise from the denial of counsel for preparation of a petition for discretionary or mandatory review beyond the stage in the appellate process at which the claims have once been presented by a lawyer and passed upon by an appellate court . . ." 372 U.S. at 356, 83 S.Ct. at 816.

In Ross v. Moffit, 417 U.S. 600, 94 S.Ct. 2437, 41 L.Ed.2d 341 (decided June 17, 1974), the Supreme Court's most recent case on indigents' rights on appeal, the court answered the question it was "not . . . concerned with" in *Douglas:*

> "Once an indigent has been assisted by counsel on his first appeal, neither due process nor equal protection requires appointment of counsel for subsequent, discretionary appeals."

The facts in the principal case can be distinguished from those in both *Moffit* and *Douglas.* Mata, like petitioners in *Douglas,* has not been assisted by counsel at any stage of the appellate process; however, unlike the petitioners in *Douglas,* Mata's first appeal is discretionary, not as of right. In *Moffit,* the petitioner was assisted by counsel on his first appeal. Although this is a case of first impression, the *Moffit* court's cogent

discussion of the constitutional underpinnings involved in indigents' rights on appeal provides clear standards upon which this Court can base its decision.

Noting that the equal protection clause "does not require absolute equality or precisely equal advantages," San Antonio Independent School District v. Rodriguez, 411 U.S. 1, 24, 93 S.Ct. 1278, 1291, 36 L.Ed.2d 16 (1973), the court in *Moffit* stated that the equal protection clause does not require a state to duplicate for the indigent the legal arsenal a rich man may employ in trying to reverse his conviction. The state must only afford the indigent an *"adequate opportunity"* to present his claims fairly in the context of the State's appellate process." 417 U.S. at 616, 94 S.Ct. at 2447, 41 L.Ed.2d at 354 (emphasis added). Moreover, because North Carolina by statute limits Supreme Court review to special cases, e. g., where the subject on appeal has significant public interest, the *Moffit* court found increased likelihood that once petitioner's claimed errors were organized and presented by a lawyer to the state court of appeals, the North Carolina Supreme Court had an "adequate basis" for deciding whether to grant review. Although an indigent is "somewhat handicapped" vis-a-vis a wealthy defendant on discretionary appeal, this relative handicap is insufficient to support a finding of denial of equal protection. The court explained its reasons for denying counsel:

"The facts show that respondent, in connection with his Mecklenburg County conviction, received the benefit of counsel in examining the record of his trial and in preparing an appellate brief on his behalf for the state Court of Appeals. Thus, prior to his seeking discretionary review in the State Supreme Court, his claims '[had] once been presented by a lawyer and passed upon by an appellate court.' . . . We do not believe that it can be said, therefore, that a defendant in respondent's circumstances is denied meaningful access to the North Carolina Supreme Court simply because the State does not ap-

point counsel to aid him in seeking review in that court. At that stage he will have, at the very least, a transcript or other record of trial proceedings, a brief on his behalf in the Court of Appeals setting forth his claims of error, and in many cases an opinion by the Court of Appeals disposing of his case. These materials, supplemented by whatever submission respondent may make *pro se*, would appear to provide the Supreme Court of North Carolina with an adequate basis on which to base its decision to grant or deny review." 417 U.S. at 614, 94 S.Ct. at 2446, 41 L.Ed.2d at 353.

Petitioner in the principal case has not received the assistance of counsel at any stage of the appellate process. Under Michigan procedure when an indigent fails, as petitioner did, to file his appeal within the allotted period, not only does his appeal as of right become merely discretionary, but his right to counsel terminates. Once the period has run, petitioner must obtain leave to appeal under the two-tiered test of GCR 803.3. This Court agrees with the state's contention that an indigent can, without assistance of counsel, adequately demonstrate whether or not he was culpably negligent in filing a tardy appeal. Such a showing requires no legal expertise. But after an indigent has first shown that "the delay was not due to [his] culpable negligence," GCR 803.3 requires that he convince the Court of Appeals that his appeal has legal merit. Moreover, this showing must be "supported by affidavit." Thus, the question of critical importance is whether after the indigent has successfully negotiated the first tier of GCR 803.3, the equal protection clause requires Michigan to furnish an attorney to aid in the petitioner's application for leave to appeal. After careful consideration and due regard for the state's procedure, we conclude that it does.

It is "invidious discrimination" for the Michigan Court of Appeals to consider the merits of an indigent's first late appeal without benefit of counsel

while allowing a rich man to employ counsel. The "relative handicap" Michigan indigents face when applying for leave to appeal is even greater than the handicap petitioners faced in *Douglas*. There, the California appellate court independently examined the record before concluding that "no good whatever could be served by appointment of counsel." 372 U.S. at 355, 83 S.Ct. at 815. Here, the only person examining the record for possible errors is petitioner—an indigent untrained in law. Furthermore, Mata's appeal is discretionary rather than as of right; if he fails to persuade the Court of Appeals his case has merit, he will not receive his first appeal, as petitioners in *Douglas* would have. While one can distinguish the principal case from *Douglas*—the appeal in the principal case is discretionary, whereas in *Douglas* it was as of right—in the context of the Michigan appellate system, this is a distinction without a difference. Whether the appeal is as of right or discretionary is irrelevant if "indigents are . . . denied *meaningful access* to that system because of their poverty." Ross v. Moffit, 417 U.S. at 611, 94 S.Ct. at 2444, 41 L.Ed.2d at 351.

The nature of discretionary review in the Michigan Court of Appeals differs substantially from the limited review available to Moffit in the North Carolina Supreme Court. By statute Michigan gives late filing but non-negligent petitioners a route back to the appellate system. Yet, "meaningful access" to this system is denied indigents: they are forced to travel this route without a vehicle. Unlike Moffit, Mata has not been assisted by counsel at any stage of appeal. Until an attorney scrutinizes the record and prepares argument for appeal, the Court of Appeals does *not* have an "adequate basis on which to base its decision to grant or deny review." Although the state procedure does not completely foreclose petitioner from presenting his claims to the Michigan appellate courts, depriving him of counsel at the initial review, simply because of his indigency, will degrade the entire appellate process to a "meaningless ritual".

Moreover, the unfairness of the Michigan system vividly emerges when one examines the scenario leading to Mata's tardy appeal. At the Center for Forensic Psychiatry in Ann Arbor, Michigan, three doctors examined Mata for nearly two months before concluding he was incompetent to stand trial. Despite this report, the trial judge accepted a local doctor's conclusion of competence that was based on an hour and fifty-minute interview with Mata. In addition to maintaining he was incompetent to stand trial, petitioner argues with some force that he received incompetent assistance of counsel. Assuming arguendo these contentions have merit, petitioner's only chance for justice within the Michigan legal system rests on his obtaining an effective appeal. Mata, however, had little chance to appeal within the 60-day period: Immediately after arriving at prison, he was interviewed by the prison psychiatrist, certified incompetent, and admitted to the Psychiatric Clinic. In addition to being under heavy sedation and frequent therapy while his appeals period ran, petitioner was held incommunicado during his stay in the Clinic. If Michigan did not furnish a route back to its appellate system through GCR 803.3, petitioner could forcefully argue a denial of due process. *See, e. g.* Johnson v. Zerbst, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938).

This Court holds that an indigent seeking leave to appeal under GCR 803.3 must satisfy the Court of Appeals he has not been culpably negligent in filing late. If he does, the state must appoint counsel to aid in the indigent's application for leave to appeal. By bifurcating the process, the Court feels that the state will be adequately protected from frivolous appeals. If negligent, a late-filing indigent will receive neither an attorney nor an appeal. If non-negligent, he will not be granted leave to appeal unless his appointed counsel persuades the Court of Appeals his case has

merit. Thus, in the present case, unless the Court of Appeals finds Mata negligent, and this seems inconceivable in light of the facts, it must appoint counsel to aid his application for leave to appeal.

## II.

▮ There remains a second issue which the petitioner properly raises at this time. It is contended that the petitioner has a right to the pre-sentence report as part of the trial record made available to him by virtue of an order of the Michigan Supreme Court. It is conceded that everything else in the file, all transcripts, and material from the Center for Forensic Psychiatry are now in the petitioner's possession.

The question of whether a criminal defendant has a right to examine a pre-sentence report has been often raised in the federal courts, and uniformly it has been answered negatively. It is not the policy of this district court to make it available to a federal defendant, and this policy was recently upheld by our Circuit Court of Appeals in United States v. Lowe, 482 F.2d 1357 (CA 6 1973). Therein, it was stated that neither the Federal Rules of Criminal Procedure nor the Constitution of the United States gives a defendant a right to such a report. *See, also,* the numerous citations of similar holdings from other circuits at p. 1359. Therefore, if petitioner has a right to his pre-sentence report, it must arise under Michigan law.

Michigan General Court Rule 785.12, amended and effective September 1, 1973, permits a defendant's attorney or the defendant, if he is not represented by counsel, to inspect the pre-sentence report. At the time of petitioner's conviction, there was no right to see the report; and recently, the Michigan Court of Appeals has held that the application of GCR 785.12 is prospective only. People v. Davis, 52 Mich.App. 59, 61, 216 N.W.2d 440 (1974). Prior to September 1, 1973, exposure of the pre-sentence report was entirely discretionary, just as it is today in the federal system. It is thus clear that petitioner has no right under the Constitution or laws of the United States or the State of Michigan to his pre-sentence report.

Accordingly, it is ordered that the State of Michigan act on petitioner's case in a manner consistent with Part I of this opinion within sixty (60) days of this date, or the writ of habeas corpus shall issue as prayed for.