*This opinion is subject to revision before final*
*publication in the Pacific Reporter.*

**2015 UT 15**

IN THE

# SUPREME COURT OF THE STATE OF UTAH

STATE OF UTAH,
*Appellant,*

*v.*

MICHAEL KEITH STEINLY,
*Appellee.*

No. 20120715
Filed January 27, 2015

Third District, Salt Lake
The Honorable Ryan Harris
No. 091909826

Attorneys:

Simarjit S. Gill, D. Adam Miller, Salt Lake City, for appellant

Kelly Ann Booth, Salt Lake City, for appellee

JUSTICE LEE authored the opinion of the Court, in which
CHIEF JUSTICE DURRANT, ASSOCIATE CHIEF JUSTICE NEHRING,
JUSTICE DURHAM, AND JUSTICE PARRISH joined.

JUSTICE LEE, opinion of the Court:

¶1 This is an interlocutory appeal in a pending criminal case against Michael Steinly. In this case and in several others related to it, we consider the applicability of legislative amendments to the Indigent Defense Act (IDA), Utah Code sections 77-32-101 through -704. The amended provisions override this court's construction of the prior version of the statute in *State v. Parduhn*, 2011 UT 55, ¶¶ 23–30, 283 P.3d 488, by foreclosing an indigent defendant in a criminal action from retaining private counsel while

requesting public defense resources from the government. *See* UTAH CODE § 77-32-303(2). They do so by generally conditioning an indigent defendant's eligibility for such resources on the retention of publicly funded counsel. *Id.*

¶2    The question in this and the related cases[1] is the applicability of these amendments to certain cases filed or pending around the time the 2012 amended version of the statute became effective (May 8, 2012). In the criminal case against Steinly, the district court granted his request for government-funded defense resources under the pre-amendment version of the statute. It held that the earlier version of the statute applied because it was a "substantive" provision regulating a defendant's right to a public defense and because that version was the one in effect at the time of Steinly's alleged offenses.

¶3    We reverse. First, we identify the conduct being regulated by the IDA—the exercise of a mature right to indigent defense resources. Second, because the law in effect at the time Steinly exercised that mature right was the amended version of the IDA, we reverse the district court's decision granting Steinly's motion. And finally, we reject Steinly's constitutional challenges to the application of the 2012 amendments to this case.

I

¶4    Steinly is charged with four first-degree felonies, one count of aggravated burglary and three counts of aggravated robbery. The criminal information in this case was filed on December 18, 2009. Steinly was found indigent by the district court in December 2009, and was thereafter appointed counsel through the Salt Lake Legal Defenders Association (LDA). LDA represented Steinly until February 23, 2010, when private counsel first appeared on his behalf.

¶5    On June 4, 2012, about one month after the 2012 amendments to the IDA became effective, Steinly filed a motion requesting funds for an expert witness and a private investigator. In support of the motion, Steinly argued that he was entitled to such funding under the IDA, and that it was necessary to a complete

---

[1] *See State v. Earl*, 2015 UT 12, __ P.3d __; *State v. Perez*, 2015 UT 13, __ P.3d __; *State v. Folsom*, 2015 UT 14, __ P.3d __; *State v. Rodriguez-Ramirez*, 2015 UT 16, __ P.3d __.

defense and thus required under constitutional principles of due process and equal protection. Salt Lake County intervened and opposed the motion, asserting that the amended statute applied to Steinly's case because the amendments were procedural rather than substantive, and thus that Steinly was not entitled to public funding once he opted out of LDA's representation.

¶6 The district court granted Steinly's motion. It concluded that the pre-amendment version of the IDA applied because it was the version of the statute that was in effect when Steinly was charged in 2009, and because the IDA amendments were substantive in that they "diminished, eliminated, or destroyed [Steinly's] substantive right . . . . to hire [his] own counsel and have the State or County provide the reasonable costs."

¶7 The County filed a petition for interlocutory appeal, which we granted. We review the district court's decision de novo, according no deference to its legal determination of which version of the IDA applies to Steinly's motion. *See Vorher v. Henriod*, 2013 UT 10, ¶ 6, 297 P.3d 614 (stating that the applicability of a statute is a matter of statutory interpretation, and thus a question of law, which we review de novo).

II

¶8 The County challenges the district court's decision granting Steinly's motion, arguing that the 2012 amendments to the IDA should apply because they fall within the scope of the so-called "clarifying amendment" exception to the prohibition on retroactive statutory application, and because the amendments were "procedural" rather than "substantive." Steinly defends the district court's determinations on these points and, alternatively, challenges the legality of application of the 2012 amendments on constitutional and statutory grounds.

¶9 We reverse. First, we conclude that the 2012 version of the IDA should apply to this case. Second, we uphold the constitutionality of the 2012 amendments as applied to this case. And finally, we decline to reach Steinly's statutory challenge to the applicability of the 2012 amendments.

A

¶10 The County's arguments challenging the district court's decision are twofold. First, the County asserts that the 2012 amend-

ments should apply retroactively under a principle previously recognized in our caselaw—that a newly codified "statute or amendment [that] deals only with clarification or amplification as to how the law should have been understood prior to its enactment" should be understood to apply retroactively. *Okland Constr. Co. v. Indus. Comm'n*, 520 P.2d 208, 210–11 (Utah 1974). And second, the County characterizes the 2012 amendments as "procedural," and contends that "procedural statutes enacted subsequent to the initiation of a suit which do not enlarge, eliminate, or destroy vested or contractual rights apply not only to future actions, but also to accrued and pending actions." *State v. Higgs*, 656 P.2d 998, 1000 (Utah 1982). We disagree with the first point but reverse based on a variation on the second—as recently clarified in *Waddoups v. Noorda*, 2013 UT 64, 321 P.3d 1108, *Gressman v. State*, 2013 UT 63, 323 P.3d 998, and *State v. Clark*, 2011 UT 23, 251 P.3d 829.

¶11 The County's first point is easily disposed of. Although our past cases occasionally have alluded to a "clarification" exception to the general rule against retroactivity, we have never actually applied that principle as a freestanding exception. *See Gressman*, 2013 UT 63, ¶ 16 ("[W]hen our cases discuss the 'clarifying amendment exception,' it is always in tandem with or as a counterpart to our analysis of the . . . distinction between substance and procedure"). And our recent cases expressly repudiate the notion of an exception for clarifying amendments, emphasizing that "[t]he sole exception spelled out explicitly by statute requires an express provision for retroactivity." *Id.*; *see also Waddoups*, 2013 UT 64, ¶ 9 (confirming that *Gressman* "repudiated" this exception).

¶12 As to the County's second point, we reverse, but on grounds somewhat distinct from those they advanced. In our prior decisions in this field, we have "sometimes" suggested that "amendments to procedural statutes are . . . retroactive because they apply presently to cases whose causes of action arose in the past." *Clark,* 2011 UT 23, ¶ 13. But our cases ultimately stand for a "simpler proposition"—that "we apply the law as it exists at the time of the event regulated by the law in question." *Id.*

¶13 The point we made in *Clark* is that the line between substance and procedure is not ultimately an *exception* to the rule

against retroactivity. It is simply a tool for identifying the relevant "event" being regulated by the law in question:

> Thus, if a law regulates a breach of contract or a tort, we apply the law as it exists when the alleged breach or tort occurs—i.e., the law that exists at the time of the event giving rise to a cause of action. Subsequent changes to contract or tort law are irrelevant. Similarly, if the law regulates a motion to intervene, we apply the law as it exists at the time the motion is filed. A change in the procedural rule would not apply retroactively to prior motions to intervene. We would not expel a party for failure to conform to a newly amended intervention rule in her prior motions.

*Id*.

¶14 This framework dictates a reversal of the district court's decision in this case. The key question is the identification of the relevant "event" being regulated by the law in question. And here that event is the assertion of a mature request for government-funded defense resources.

¶15 The event at issue is not the alleged conduct that gave rise to the criminal charges against Steinly. The IDA, after all, does not define the elements of aggravated robbery or aggravated burglary, nor does it dictate sentences for, or other consequences of, those crimes. *See Landgraf v. USI Film Prods.*, 511 U.S. 244, 269–70 (1994) (explaining that a law is understood as retroactive if it "attaches new legal consequences to events completed before its enactment"). Instead, the IDA regulates Steinly's activity occurring within the course of the criminal proceedings against him. It prescribes, specifically, the terms and conditions of the provision of government-funded defense resources long guaranteed as an adjunct to the right to counsel under the Sixth Amendment of the United States Constitution. *See Britt v. North Carolina*, 404 U.S. 226, 227 (1971) (stating that indigent defendant has a Sixth Amendment right to "the basic tools of an adequate defense").

¶16 The assertion of that right requires the confluence of three elements: (a) the legal right to counsel and associated defense resources, which is generally triggered by the filing of formal crimi-

nal charges;[2] (b) the legal right to have those defense resources provided by the government, which is implicated by a determination of indigency;[3] and (c) the assertion of a request for defense resources, typically by the filing of a formal motion requesting such resources.[4] When these three elements come together, a defendant's assertion of his right to government-funded defense resources has matured or vested. And as of that date, the defendant is entitled to the benefit of the law in place at that time. *See Clark*, 2011 UT 23, ¶ 13 (explaining that "we apply the law as it exists at the time" of the event being regulated).

¶17 The 2012 amendments to the IDA apply to Steinly's motion under this framework. Steinly's assertion of his mature right to defense resources came after the effective date of the 2012 amendments to the IDA (May 8, 2012). The charges were filed before then and private counsel appeared before that date, but the motion requesting funding for defense resources was not filed until June 4, 2012. Thus, as of the date of the culmination of Steinly's assertion of a right to defense resources, the amended law was in place. Application of the 2012 amendments is therefore appropriate and does not run afoul of the general rule against retroactivity. We reverse the district court's decision on that basis.

B

¶18 Steinly presents two challenges to the constitutionality of the 2012 amendments. First, he claims that the amendments in-

---

[2] *See Kirby v. Illinois*, 406 U.S. 682, 688 (1972) (stating the Sixth Amendment right to counsel attaches "at or after the time that adversary judicial proceedings have been initiated against him").

[3] *See Gideon v. Wainwright*, 372 U.S. 335, 342–44 (1963) (holding that state courts are required under the Fourteenth Amendment to provide counsel in criminal cases to represent defendants who are unable to afford to retain their own counsel); *see also* UTAH CODE §§ 77-32-202 & -301 (2012) (outlining procedure for determination of indigency, and stating that "[e]ach county, city, and town shall provide for the legal defense" of a defendant who is an "indigent in [a] criminal case[]").

[4] *See* UTAH CODE § 77-32-302(1)(a) (2012) (providing that a defense services provider "shall be assigned to represent each indigent" upon "the indigent['s] request[] [for] legal defense").

fringe his constitutional right to counsel of his choice while also preserving his access to necessary defense resources. Second, he asserts that the 2012 amendments run afoul of the Equal Protection and Uniform Operation clauses of the United States and Utah Constitutions. Neither challenge has merit.

¶19 The constitutional right to counsel encompasses the prerogative of choosing counsel of one's choice and of receiving resources necessary to an adequate defense. *See Ake v. Oklahoma*, 470 U.S. 68, 76–77 (1985). Such rights are qualified ones, however, affected by the "avenues which [the defendant] chose not to follow as well as those he now seeks to widen." *United States v. MacCollom*, 426 U.S. 317, 326 (1976). When a defendant elects an avenue that steers away from the public representation provided by the government, he has received the private counsel of his choice and has no constitutional right to defense resources from a secondary source backed by government funding.

¶20 The "right to choose one's own counsel is circumscribed in several important respects," most importantly in the fact that an indigent defendant cannot "insist on representation by an attorney he cannot afford." *Wheat v. United States*, 486 U.S. 153, 159 (1988). The United States Supreme Court, moreover, has not prescribed a single orthodoxy for the provision of the defense resources required by the Sixth Amendment. It instead has "le[ft] to the State the decision on how to implement" this constitutional guarantee. *Ake*, 470 U.S. at 83. And in our state the legislature has chosen to couple the availability of defense resources with the retention of government-funded counsel. Thus, a defendant has every right to decline the counsel the government offers in favor of the one he prefers, but in so doing, he loses the right to a publicly funded defense. *See Wheat*, 486 U.S. at 159.[5]

¶21 An indigent defendant has a right to "the basic tools of an adequate defense," *Britt*, 404 U.S. at 227, not "the legal arsenal that

---

[5] *See also Miller v. Smith*, 115 F.3d 1136, 1143 (4th Cir. 1997) (en banc) ("[A]n indigent criminal defendant has no constitutional right to have a particular lawyer represent him."); *Thomas v. Wainwright*, 767 F.2d 738, 742 (11th Cir. 1985) ("An indigent criminal defendant has an absolute right to be represented by counsel, but he does not have a right to have a particular lawyer represent him.").

may be privately retained by a criminal defendant," *Ross v. Moffitt*, 417 U.S. 600, 616 (1974).[6] Accordingly, the constitutional question before us is whether the defense available to indigents through the "exclusive source" of a public defense is "adequate." And Steinly has not carried his burden under this standard. He has not demonstrated that the panoply of resources provided by the public defense made available in Salt Lake County falls short of the fundamental requirement of "the basic tools of an adequate defense," and without that showing there is no ground for establishing a new constitutional right to unbundled defense resources.

¶22 Under the 2012 amendments to the IDA, a defendant who opts out of public representation has also opted out of public defense resources. And nothing in the Constitution requires a different result. We accordingly reject Steinly's challenge to the constitutionality of the 2012 amendments to the IDA under the Sixth Amendment of the United States Constitution.

¶23 We also reject Steinly's constitutional challenges under the Equal Protection Clause of the United States Constitution and the Uniform Operation of Laws Clause of the Utah Constitution.[7] *See* U.S. CONST. amend. XIV, § 1; UTAH CONST. art. I, § 24. Under these provisions, Steinly asserts that the amended IDA discriminates without any rational basis against indigent defendants who have

---

[6] *See also Ross v. Moffitt*, 417 U.S. 600, 612, 616 (1974) ("The question is not one of absolutes, but one of degrees. . . . [T]he fact that a particular service might be of benefit to an indigent defendant does not mean that the service is constitutionally required. The duty of the State under our cases is not to duplicate the legal arsenal that may be privately retained by a criminal defendant in a continuing effort to reverse his conviction, but only to assure the indigent defendant an adequate opportunity to present his claims fairly in the context of the State's appellate process.").

[7] Steinly also alludes to a constitutional challenge on due process grounds. But Steinly did not brief that issue independently or provide any due process authority distinct from that in his equal protection and uniform operation arguments. He has therefore failed to carry his burden of persuasion and, to the extent he made one, Steinly's due process argument is rejected.

retained private counsel.[8] Yet despite this broadside attack on the statute, we see ample grounds for upholding it as rational. The State, and its counties and municipalities, have a legitimate interest in maintaining the control necessary to ensure that the funds that are dedicated to indigent legal defense are not abused or wasted, and that legal defense services are provided effectively and efficiently. That basis is a rational—and therefore sufficient—ground for upholding the constitutionality of the 2012 IDA. The legislature acted well within the bounds of rationality in asserting an interest in ensuring for government the oversight, control, and efficiency associated with the single-source approach to indigent defense resources established in the 2012 amendments. We uphold the statute on that basis.

## C

¶24 Steinly's final argument is that he is entitled to public defense resources even under the amended IDA because the County failed to "provide all legal defense elements as a single package," as those terms are used under Utah Code section 77-32-301(2)(c). In the district court and on this appeal, the County responded by insisting that it has in fact provided all elements of an effective defense as a "single package." But the district court stopped short of reaching this issue—noting that there was no need to "get into the details" of the issue or to hold the "evidentiary hearing" that might be necessary to resolve it given that it had ruled in Steinly's favor on alternative grounds.

¶25 We likewise decline to reach this issue on this interlocutory appeal. Because the district court has not yet had an opportunity to address this issue, and because its resolution may turn on fac-

---

[8] *See State v. Chettero*, 2013 UT 9, ¶¶ 20–22, 297 P.3d 582 (explaining that in equal protection claims, "rational basis" scrutiny applies absent a suspect class or fundamental right at issue, and requires only that the statute "bear some conceivable relation to a legitimate government purpose or goal"); *State v. Canton*, 2013 UT 44, ¶¶ 35–36, 308 P.3d 517 (stating that rational basis review applies to Uniform Operation claims under the Utah Constitution unless a classification is of a kind "so generally problematic (and so unlikely to be reasonable) that [it] trigger[s] heightened scrutiny," such as race, gender, and certain fundamental rights).

tual matters not developed on the record before us, we remand to allow the district court to address it in the first instance if Steinly continues to press it.

### III

¶26  For all these reasons we reverse the district court's decision declining to extend the 2012 amendments to the IDA while upholding the amendments against Steinly's constitutional attack. And we remand for further proceedings not inconsistent with this opinion.

———————