*This opinion is subject to revision before final publication in the Pacific Reporter.*

**2015 UT 14**

IN THE

# SUPREME COURT OF THE STATE OF UTAH

STATE OF UTAH,
*Appellee,*

*v.*

DANIEL J. FOLSOM,
*Appellant.*

No. 20120532
Filed January 27, 2015

Third District, Salt Laket
The Honorable William B. Barrett
No. 111909566

Attorneys:

Bernadette M. Gomez, D. Adam Miller, Salt Lake City,
for appellees

Craig L. Pankratz, David M. Corbett, Salt Lake City, for appellant.

JUSTICE LEE authored the opinion of the Court, in which
CHIEF JUSTICE DURRANT, ASSOCIATE CHIEF JUSTICE NEHRING,
JUSTICE DURHAM, AND JUSTICE PARRISH joined.

JUSTICE LEE, opinion of the Court:

¶1   This is an interlocutory appeal in a pending criminal case against Daniel J. Folsom. In this case and in several others related to it, we consider the applicability of legislative amendments to the Indigent Defense Act (IDA), Utah Code sections 77-32-101 through -704. The amended provisions override this court's construction of the prior version of the statute in *State v. Parduhn*, 2011 UT 55, ¶¶ 23–30, 283 P.3d 488, by foreclosing an indigent

defendant in a criminal action from retaining private counsel while requesting public defense resources from the government. *See* UTAH CODE § 77-32-303(2). They do so by generally conditioning an indigent defendant's eligibility for such resources on the retention of publicly funded counsel. *Id.*

¶2    The question in this and related cases[1] is the applicability of these amendments to certain cases filed or pending at the time the statute became effective (May 8, 2012). In the criminal case against Folsom, the district court denied his request for government-funded defense resources on the ground that the 2012 amendments were "procedural" and accordingly deemed to apply retroactively to this case.

¶3    We reverse. First, we identify the conduct being regulated by the IDA—the exercise of a mature right to indigent defense resources. And second, because the law in effect at the time that Folsom exercised that right was the pre-amended version of the IDA, we reverse the district court's decision applying the 2012 amendment.

I

¶4    Folsom stands charged with murder. The criminal information in this case was filed on December 19, 2011. On the following day, Folsom was declared indigent and was appointed counsel through the Salt Lake Legal Defender Association (SLLDA). On the day after that, however, Folsom elected to retain private counsel instead.

¶5    Folsom proceeded with trial preparation with private counsel for several months. Then, on May 3, 2012, he filed a motion asking the district court to order the provision of government-funded defense resources. Folsom asked, specifically, that the state provide funding for: (1) defense investigative services, (2) a forensic toxicologist, (3) DNA testing, (4) a forensic pathologist, (5) transcripts, (6) a wound-identification expert, and (7) a neurosurgeon. In Folsom's view, all of these resources were essential in light of the complexity of the case and seriousness of the charges. And because the IDA amendments were not to go

---

[1] *See State v. Earl*, 2015 UT 12, __ P.3d __; *State v. Perez*, 2015 UT 13, __ P.3d __; *State v. Steinly*, 2015 UT 15, __ P.3d __*State v. Rodriguez-Ramirez*, 2015 UT 16, __ P.3d __.

into effect until five days after the motion was filed (on May 8), Folsom insisted that they did not apply.

¶6    The district court denied Folsom's motion. It did so on the basis of its conclusion that the IDA regulated a matter of "procedure" and thus that the statute applied retroactively to cases pending on its effective date. Folsom then asked us to review the district court's decision on an interlocutory appeal. We agreed to do so, granting Folsom's petition as well as several others raising similar questions. We review the district court's decision de novo, according no deference to its legal determination of which version of the IDA applies to Folsom's motion. *See Vorher v. Henriod*, 2013 UT 10, ¶ 6, 297 P.3d 614 (stating that the applicability of a statute is a matter of statutory interpretation, and thus a questions of law, which we review de novo).

II

¶7    The question before us concerns which version of the IDA applies to Folsom's motion for government-funded defense resources. Before the 2012 amendments, the IDA was interpreted by this court to "expressly contemplate[] the provision of defense resources to indigent defendants separate and apart from the provision of counsel." *State v. Parduhn*, 2011 UT 55, ¶ 26, 283 P.3d 488. Under the 2012 amendments, however, the government "may not provide defense resources for a defendant who has retained private counsel," except in limited circumstances not implicated on this appeal. UTAH CODE § 77-32-303(2).

¶8    Folsom's appeal challenges the district court's retroactive application of the 2012 amendment to the resolution of his motion. He characterizes the IDA's regulation of defense resources as a "substantive" matter, in that it dictates a defendant's eligibility "to receive State-paid defense resources while being represented by a private attorney." And because he conceives of the right to such resources as both significant and "vested," Folsom finds error in the district court's decision deeming the IDA's amendments as matters of procedure subject to retroactive application. *See State v. Johnson*, 2012 UT 68, ¶¶ 12–13, 290 P.3d 21 (characterizing as "substantive" statutes that "enlarge, eliminate, . . . destroy, . . . [or] govern[] the scope of a

3

[party's] vested or contractual rights" (internal quotation marks omitted)).

¶9 The State, for its part, defends the district court's decision. It asserts that the terms and conditions of the defense resources provided by the government to an indigent defendant is "procedural" in the sense of constituting an element of the "practice and procedure or the legal machinery by which the substantive law is . . . made effective." *See Harvey v. Cedar Hills City*, 2010 UT 12, ¶ 14, 227 P.3d 256 (internal quotation marks omitted). And it argues, alternatively, that the statute should apply retroactively as a provision that merely "clarifies" an earlier legislative pronouncement. *See Johnson*, 2012 UT 68, ¶ 16.

¶10 We reverse, but on grounds somewhat distinct from those advanced by Folsom. In our prior decisions in this field, we have "sometimes" suggested that "amendments to procedural statutes are . . . retroactive because they apply presently to cases whose causes of action arose in the past." *State v. Clark,* 2011 UT 23, ¶ 13, 251 P.3d 829. But our cases ultimately stand for a "simpler proposition"—that "we apply the law as it exists at the time of the event regulated by the law in question." *Id.*

¶11 The point we made in *Clark* is that the line between substance and procedure is not ultimately an *exception* to the rule against retroactivity. It is simply a tool for identifying the relevant "event" being regulated by the law in question:

> Thus, if a law regulates a breach of contract or a tort, we apply the law as it exists when the alleged breach or tort occurs—i.e., the law that exists at the time of the event giving rise to a cause of action. Subsequent changes to contract or tort law are irrelevant. Similarly, if the law regulates a motion to intervene, we apply the law as it exists at the time the motion is filed. A change in the procedural rule would not apply retroactively to prior motions to intervene. We would not expel a party for failure to conform to a newly amended intervention rule in her prior motions.

*Id.*

¶12 This framework dictates a reversal of the district court's decision in this case. The key question is the identification of the

relevant "event" being regulated by the law in question. And here that event is the assertion of a mature request for government-funded defense resources.

¶13 The event at issue is not the alleged conduct of Folsom that gave rise to the murder charge against him. The IDA, after all, does not define the elements of murder or dictate a sentence for, or other consequence of, such conduct. *See See Landgraf v. USI Film Prods.*, 511 U.S. 244, 269–70 (1994) (explaining that a law is understood as retroactive if it "attaches new legal consequences to events completed before its enactment"). Instead, the IDA regulates Folsom's activity in the course of the criminal proceedings against him. It prescribes, specifically, the terms and conditions of the provision of government-funded defense resources long guaranteed as an adjunct to the right to counsel under the Sixth Amendment of the United States Constitution. *See Britt v. North Carolina*, 404 U.S. 226, 227 (1971) (stating that the indigent defendant has a Sixth Amendment right to "the basic tools of an adequate defense").

¶14 The assertion of that right requires the confluence of three elements: (a) the legal right to counsel and associated defense resources, which is generally triggered by the filing of formal criminal charges;[2] (b) the legal right to have those defense resources provided by the government, which is implicated by a determination of indigency;[3] and (c) the assertion of a request for defense resources, typically by the filing of a formal motion

---

[2] *See Kirby v. Illinois*, 406 U.S. 682, 688 (1972) (stating the Sixth Amendment right to counsel attaches "at or after the time that adversary judicial proceedings have been initiated against him").

[3] *See Gideon v. Wainwright*, 372 U.S. 335, 342–44 (1963) (holding that state courts are required under the Fourteenth Amendment to provide counsel in criminal cases to represent defendants who are unable to afford to retain their own counsel); *see also* UTAH CODE § 77-32-202 & 301 (2012) (outlining procedure for determining indigency, and stating that "[e]ach county, city, and town shall provide for the legal defense" of a defendant who is an "indigent in [a] criminal case[]").

requesting such resources.[4] When these three elements come together, the defendant's assertion of his right to government-funded defense resources has matured or vested. And as of that date, the defendant is entitled to the benefit of the law in place at that time. *See Clark*, 2011 UT 23, ¶ 13 (explaining that "we apply the law as it exists at the time" of the event being regulated). Just as "[w]e would not expel a party for failure to conform to a newly amended intervention rule in her prior motions," *id.*, we cannot subject Folsom to law amended after he became entitled to government-funded defense resources and filed his motion requesting their provision. On the date he asserted a matured right to defense resources by filing his motion, Folsom was entitled to the benefit of the law as it then stood, and the general rule against retroactivity protects his reliance interests as of that date.

¶15 We reverse on that basis. Folsom filed his motion requesting the provision of defense resources on May 3, 2012. And on that date, his right to request those resources was fully vested, as the information charging him with murder had previously been filed and he also had been determined to be indigent. Folsom was entitled to the benefit of the law in place on May 3, and subsequent changes to the law could not be applied retroactively to undermine his motion.

¶16 We accordingly reverse the district court's decision applying the amended version of the IDA to Folsom's request for defense resources. And we remand for further proceedings not inconsistent with this opinion.

———————

[4] *See* UTAH CODE § 77-32-302(1)(a) (2012) (providing that a defense services provider "shall be assigned to represent each indigent" upon "the indigent['s] request[] [for] legal defense").