*This opinion is subject to revision before final publication in the Pacific Reporter.*

**2015 UT 12**

IN THE

# SUPREME COURT OF THE STATE OF UTAH

STATE OF UTAH,
*Appellee,*

*v.*

TARA EARL,
*Appellant.*

No. 20120991
Filed January 27, 2015

Third District, Salt Lake
The Honorable Katherine Bernards-Goodman
No. 121902921

Fourth District, Provo Dep't
The Honorable Steven L. Hansen
No. 111403103

Attorneys:

Jeff Buhman, Dianne R. Orcutt, D. Adam Miller, Salt Lake City,
for appellee

Sean P. Hullinger, Lehi, for appellant

JUSTICE LEE authored the opinion of the Court, in which
CHIEF JUSTICE DURRANT, ASSOCIATE CHIEF JUSTICE NEHRING,
JUSTICE DURHAM, AND JUSTICE PARRISH joined.

JUSTICE LEE, opinion of the Court:

¶1   This is a consolidated interlocutory appeal in two pending criminal cases against Tara Earl. In these cases and in several related ones, we consider the applicability of legislative

amendments to the Indigent Defense Act (IDA), Utah Code sections 77-32-101 through -704. The amended provisions override this court's construction of the prior version of the statute in *State v. Parduhn*, 2011 UT 55, ¶¶ 23–30, 283 P.3d 488, by foreclosing an indigent defendant in a criminal action from retaining private counsel while requesting public defense resources from the government. *See* UTAH CODE § 77-32-303(2). They do so by generally conditioning an indigent defendant's eligibility for such resources on the retention of publicly funded counsel. *Id.*

¶2    The question in these and related cases[1] is the applicability of these amendments to certain cases filed or pending around the time the statute became effective (May 8, 2012). In the two criminal cases against Earl, two district court judges denied her requests for government-funded defense resources. We affirm. First, we identify the conduct being regulated by the IDA—the exercise of a mature right to indigent defense resources. Second, because the law in effect at the time that Earl exercised that right was the amended version of the IDA, we affirm the district court's decision denying Earl's motion. And finally, we reject Earl's constitutional and statutory challenges to the application of the IDA amendments to her case.

I

¶3 Earl stands charged with Unlawful Sexual Conduct involving a 16- or 17-year-old, a third-degree felony, in both the Third District Court and Fourth District Court. The criminal information in the Fourth District case was filed on November 21, 2011. In the Third District case, the information was filed on March 26, 2012.

¶4    At all relevant times, Earl has been represented by private counsel. She eventually filed an affidavit of indigency, however, which was accepted by both district courts. And she filed motions for government-funded defense resources in both cases. The Fourth District motion was filed on May 8, 2012. The Third District motion was filed on November 29, 2012.

---

[1] *See State v. Perez*, 2015 UT 13, __ P.3d __; *State v. Folsom*, 2015 UT 14, __ P.3d __; *State v. Steinly*, 2015 UT 15, __ P.3d __. *State v. Rodriguez-Ramirez*, 2015 UT 16, __ P.3d __.

¶5 In support of her motions, Earl asserted that the pre-amendment version of the IDA applied to her case because it was in effect at the time she was charged, and because the IDA amendments diminished her substantive right to counsel and thus cannot be applied retroactively. She also argued that by depriving her of state funding for her private counsel of choice, the amended IDA violated her constitutional right to effective assistance of counsel, due process, equal protection, and uniform operation laws. The State countered that the amended IDA applied because it had taken effect by the time Earl filed her motions for defense resources, and that in any case the amendments were procedural and thus retroactively applicable to cases already pending at the time they went into effect.

¶6 In addition to arguing in support of a vested right under the unamended version of the IDA, Earl also advanced separate challenges to the legality of the denial of her request for funding even under the amended statute. In the Fourth District, Earl asserted that Utah County's contract with its defense services provider did not comply with the notice and public bidding requirements set forth in the Utah Procurement Act, Utah Code Title 63G, Chapter 6a. And in the Third District, Earl challenged the constitutionality of the provision of the amended IDA conditioning an indigent defendant's eligibility for such resources on the retention of publicly funded counsel.

¶7 Both district courts denied Earl's motions and rejected her alternative challenges to the legality of the denial of her requests under the amended IDA. In denying the motion in the Fourth District, Judge Hansen concluded that application of the amended IDA did not amount to the "retroactive" application of law to events completed before its enactment. Thus, Judge Hansen suggested that the law did not "'attach[] new legal consequences to events completed before its enactment,'" but instead merely applied prospectively to Earl's request for public funding, which was filed after the law went into effect. And on that basis Judge Hansen held that Earl's motion was "subject to the new statute as it was the governing law at the time of the request," while suggesting in the alternative that the statute was "procedural and may thus be applied retroactively."

¶8 Judge Hansen also rejected Earl's assertion that "the limitations of the new statute [did] not apply in this case because

Utah County ha[d] not contracted with a defense service provider" in a manner in compliance with the public notice and bidding requirements of the state procurement statute, Utah Code sections 63G-6a-406, 602. The basis of his holding on this point was the conclusion that even if the Public Defender's Association could not qualify as a "defense services provider" under Utah Code section 77-32-201(4), the county had satisfied the statute in an alternative manner, by establishing a "county legal defender's office" under Utah Code section 77-32-302(2)(a).

¶9    The Third District also denied Earl's motion. Judge Bernards-Goodman concluded that the 2012 amendments to the IDA "constitute a procedure change" to the law and therefore governed Earl's motion. And she also rejected Earl's constitutional challenge to the amended IDA, holding that her "rights under the Sixth Amendment of the U.S. Constitution and Article I, Section 12 of the Utah State Constitution are not violated by application of the current version of the Indigent Defense Act."

¶10 Earl filed petitions for interlocutory appeal, which were granted. We review the district courts' decisions de novo, according no deference to their legal determinations of which version of the IDA applies to Earl's motions, or to their analysis of the grounds for challenging the legality of the provision of the amended IDA conditioning funding for defense resources on the retention of publicly funded counsel. *See Vorher v. Henriod*, 2013 UT 10, ¶ 6, 297 P.3d 614 (stating that the applicability of a statute is a matter of statutory interpretation, and thus a question of law, which we review de novo).

II

¶11 Earl challenges the district courts' decisions denying her motions for funding of defense resources under the amended version of the IDA and also asserts alternative legal challenges to the application of the 2012 amendments in this case. First, she asserts that she acquired a "vested" right to proceed under the "law in effect at the time of [her] underlying primary conduct," meaning "the conduct giving rise to [the] criminal charge[s]" against her. Second, even assuming that the amended IDA applies, Earl challenges the operative provision of the amended statute on various constitutional grounds. And finally, echoing points raised in the Fourth District proceeding below, Earl asserts

that the counties failed to follow notice and public bidding requirements in the state procurement statute in establishing a "defense services provider" under Utah Code section 77-32-202(4). We reject all three arguments and affirm.

A

¶12 Earl's first argument fails for reasons identified by Judge Hansen in the Fourth District decision before us on this appeal. As Judge Hansen noted, the rule against retroactivity proscribes the retroactive application of a newly enacted statute "in a case arising from conduct antedating the statute's enactment" in a manner that "upsets expectations based in prior law." *Landgraf v. USI Film Prods.*, 511 U.S. 244, 269 (1994). And that principle is implicated where "the new provision attaches new legal consequences to events completed before its enactment." *Id.* at 270.

¶13 We agree with Judge Hansen that this principle is not implicated here because the IDA amendments do not attach new legal consequences to the activity giving rise to the criminal charges against Earl. And we affirm the decisions in both of the consolidated cases before us because, as Judge Hansen put it, Earl "asked the court for public funding on her case after the new statute became effective," and her "request is subject to the new statute as it was the governing law at the time of the request."

¶14 This analysis is consistent with a clarification we offered in in *State v. Clark*, 2011 UT 23, ¶ 13, 251 P.3d 829. There we noted that the line between substance and procedure is not ultimately an *exception* to the rule against retroactivity but a tool for identifying the relevant "event" being regulated by the law in question:

> Thus, if a law regulates a breach of contract or a tort, we apply the law as it exists when the alleged breach or tort occurs—i.e., the law that exists at the time of the event giving rise to a cause of action. Subsequent changes to contract or tort law are irrelevant. Similarly, if the law regulates a motion to intervene, we apply the law as it exists at the time the motion is filed. A change in the procedural rule would not apply retroactively to prior motions to intervene. We would not expel a party for failure to conform to a

newly amended intervention rule in her prior motions.

*Id.*

¶15 This framework dictates an affirmance of the district courts' decisions in the cases before us on appeal. The key question is the identification of the relevant "event" being regulated by the law in question. And here that event is the assertion of a mature request for government-funded defense resources.

¶16 The event at issue is not the alleged conduct of Earl that gave rise to the criminal charges against her. The IDA, after all, does not define the elements of the unlawful sexual conduct crime with which she is charged or dictate a sentence for, or other consequence of, such conduct. *See Landgraf*, 511 U.S. at 269–70 (explaining that a law is understood as retroactive if it "attaches new legal consequences to events completed before its enactment"). Instead, the IDA regulates Earl's activity occurring within the course of the criminal proceedings against her. It prescribes, specifically, the terms and conditions of the provision of government-funded defense resources long guaranteed as an adjunct to the right to counsel under the Sixth Amendment of the United States Constitution. *See Britt v. North Carolina*, 404 U.S. 226, 227 (1971) (stating that indigent defendant has a Sixth Amendment right to "the basic tools of an adequate defense").

¶17 The assertion of that right requires the confluence of three elements: (a) the legal right to counsel and associated defense resources, which is generally triggered by the filing of formal criminal charges;[2] (b) the legal right to have those defense resources provided by the government, which is implicated by a determination of indigency;[3] and (c) the assertion of a request for

---

[2] *See Kirby v. Illinois*, 406 U.S. 682, 688 (1972) (stating the Sixth Amendment right to counsel attaches "at or after the time that adversary judicial proceedings have been initiated against him").

[3] *See Gideon v. Wainwright*, 372 U.S. 335, 342–44 (1963) (holding that state courts are required under the Fourteenth Amendment to provide counsel in criminal cases to represent defendants who are unable to afford to retain their own counsel); *see also* UTAH CODE §§ 77-32-202 & -301 (2012) (outlining procedure for determination

defense resources, typically by the filing of a formal motion requesting such resources.[4] When these three elements come together, a defendant's assertion of her right to government-funded defense resources has matured or vested. And as of that date, the defendant is entitled to the benefit of the law in place at that time. *See Clark*, 2011 UT 23, ¶ 13 (explaining that "we apply the law as it exists at the time" of the event being regulated).

¶18 Earl's argument fails under this framework. The assertion of her mature right to defense resources came on or after the effective date of the 2012 amendments to the IDA (May 8, 2012). The charges in both cases were filed before then and private counsel appeared before that date, but the motions requesting funding for defense resources were not filed until May 8, 2012 (in the Fourth District) and November 29, 2012 (in the Third District). Thus, as of the date of the culmination of Earl's assertion of a right to defense resources, the amended law was in place. Application of the 2012 amendments was thus appropriate and did not run afoul of the general rule against retroactivity. We affirm the district court decisions in both cases before us on that basis.

B

¶19 Earl's constitutional claims were properly preserved only in the Third District proceeding. Her briefing in the Fourth District failed to present any constitutional analysis, and for that reason we decline to reach her arguments as applied to that case on grounds of preservation.[5]

---

of indigency, and stating that "[e]ach county, city, and town shall provide for the legal defense" of a defendant who is an "indigent in [a] criminal case[]").

[4] *See* UTAH CODE § 77-32-302(1)(a) (2012) (providing that a defense services provider "shall be assigned to represent each indigent" upon "the indigent['s] request[] [for] legal defense").

[5] *See Hill v. Superior Prop. Mgmt. Servs., Inc.*, 2013 UT 60, ¶ 46, 321 P.3d 1054 (stating that to be preserved, "an issue must be (1) raised in a timely fashion, (2) be specifically raised, and (3) the challenging party must introduce supporting evidence or relevant legal authority. Preservation requires affording the district court a meaningful opportunity to rule on the ground that is advanced on appeal, and that implies, at a minimum, not just the invocation of

¶20 Earl did present constitutional claims to the Third District. In that case, Earl argued, as she does before us on this appeal, that her constitutional right to counsel encompassed a right to "the resources necessary to prepare and present a complete and effective defense." Citing *Ake v. Oklahoma*, 470 U.S. 68 (1985), Earl asserts a right to "meaningful access to justice" and an "adequate opportunity to present [her] claims fairly within the adversary system," *id.* at 77 — a right that, in her view, cannot be conditioned on the retention of a "public[ly] appointed lawyer."

¶21 We reject this argument and affirm.[6] The constitutional right to counsel encompasses the prerogative of choosing counsel of one's choice and of receiving resources necessary to an adequate defense. *See Ake*, 470 U.S. at 76–77. Such rights are qualified ones, however, affected by the "avenues which [the defendant] chose not to follow as well as those [she] now seeks to widen." *United States v. MacCollom*, 426 U.S. 317, 326 (1976). When a defendant elects an avenue that steers away from the public representation provided by the government, she has received the private counsel of her choice and has no constitutional right to defense resources from a secondary source backed by government funding.

¶22 The "right to choose one's own counsel is circumscribed in several important respects," most importantly in the fact that an indigent defendant cannot "insist on representation by an attorney he cannot afford." *Wheat v. United States*, 486 U.S. 153, 159 (1988). The United States Supreme Court, moreover, has not prescribed a single orthodoxy for the provision of the defense resources required by the Sixth Amendment. It instead has "le[ft] to the State the decision on how to implement" this constitutional guarantee. *Ake*, 470 U.S. at 83. And in our state the legislature has chosen to couple the availability of defense resources with the

a legal principle but also its application to the facts of the case" (internal quotation marks omitted)).

[6] In the Third District and again on appeal, Earl has vaguely alluded to a right to counsel under Article I, Section 12 of the Utah Constitution. But she offers no meaningful analysis of the text or history of that provision and gives us no basis for recognizing a right thereunder that differs in any respect from that of the Sixth Amendment. So because her authority and arguments are all federal, we also focus our analysis on the Sixth Amendment.

retention of government-funded counsel. Thus, a defendant has every right to decline the counsel the government offers in favor of the one she prefers, but in so doing, she loses the right to a publicly funded defense. *See Wheat*, 486 U.S. at 159.[7]

¶23 An indigent defendant has a right to "the basic tools of an adequate defense," *Britt*, 404 U.S. at 227, not "the legal arsenal that may be privately retained by a criminal defendant," *Ross v. Moffitt*, 417 U.S. 600, 616 (1974).[8] Accordingly, the constitutional question before us is whether the defense available to indigents through the "exclusive source" of a public defense is "adequate." And Earl has not carried her burden under this standard. She has not demonstrated that the panoply of resources provided by the public defense made available in Salt Lake County falls short of the fundamental requirement of "the basic tools of an adequate defense," and without that showing there is no ground for establishing a new constitutional right to unbundled defense resources.

¶24 A defendant who opts out of public representation has also opted out of public defense resources, and nothing in the Constitution requires a different result. We accordingly affirm the Third District Court's decision rejecting Earl's challenge to the constitutionality of the 2012 amendments to the IDA under the Sixth Amendment of the U.S. Constitution.

---

[7] *See also Miller v. Smith*, 115 F.3d 1136, 1143 (4th Cir. 1997) (en banc) ("[A]n indigent criminal defendant has no constitutional right to have a particular lawyer represent him."); *Thomas v. Wainwright*, 767 F.2d 738, 742 (11th Cir. 1985) ("An indigent criminal defendant has an absolute right to be represented by counsel, but he does not have a right to have a particular lawyer represent him.").

[8] *See also Ross v. Moffit*, 417 U.S. 600, 612, 616 (1974) ("The question is not one of absolutes, but one of degrees. . . . [T]he fact that a particular service might be of benefit to an indigent defendant does not mean that the service is constitutionally required. The duty of the State under our cases is not to duplicate the legal arsenal that may be privately retained by a criminal defendant in a continuing effort to reverse his conviction, but only to assure the indigent defendant an adequate opportunity to present his claims fairly in the context of the State's appellate process.").

¶25 We also reject a series of further constitutional challenges raised by Earl on appeal—under the Equal Protection Clause of the United States Constitution and the Uniform Operation of Laws Clause of the Utah Constitution.[9] *See* U.S. CONST. amend. XIV, § 1; UTAH CONST. art. I, § 24. Under these provisions, Earl asserts that the amended IDA discriminates without any rational basis against indigent defendants who have retained private counsel.[10] Yet despite this broadside attack on the statute, we see ample grounds for upholding it as rational. The State, and its counties and municipalities, have a legitimate interest in maintaining the control necessary to ensure that the funds that are dedicated to indigent legal defense are not abused or wasted, and that legal defense services are provided effectively and efficiently. That basis is a rational—and therefore sufficient—ground for upholding the constitutionality of the 2012 IDA. The legislature acted well within the bounds of rationality in asserting an interest in ensuring for government the oversight, control, and efficiency associated with the single-source approach to indigent defense resources established in the 2012 amendments. We uphold the statute on that basis.

---

[9] In the same breath as her equal protection and uniform operation challenges, Earl also alludes to an additional constitutional challenge on due process grounds. But Earl did not brief that issue independently or provide any due process authority distinct from that provided in support of her equal protection and uniform operation arguments. She has therefore failed to carry her burden of persuasion and, to the extent she made one, Earl's due process argument is rejected.

[10] *See State v. Chettero*, 2013 UT 9, ¶¶ 20–22, 297 P.3d 582 (explaining that in equal protection claims, "rational basis" scrutiny applies absent a suspect class or fundamental right at issue, and requires only that the statute "bear some conceivable relation to a legitimate government purpose or goal"); *State v. Canton*, 2013 UT 44, ¶¶ 35–36, 308 P.3d 517 (stating that rational basis review applies to Uniform Operation claims under the Utah State Constitution unless a classification is of a kind "so generally problematic (and so unlikely to be reasonable) that [it] trigger[s] heightened scrutiny," such as race, gender, and certain fundamental rights).

¶26 *Cuyler v. Sullivan*, 446 U.S. 335 (1980), is not to the contrary. Earl quotes this case for the proposition that there is "no basis for drawing a distinction between retained and appointed counsel that would deny equal justice to defendants who must choose their own lawyers." *Id*. at 344–45. But the context of the quoted language belies Earl's suggestion that it undermines the constitutionality of the operative terms of the 2012 amendment to the IDA. The question in *Cuyler* concerned the standard for assessing a defendant's assertion of a violation of the Sixth Amendment in circumstances involving an alleged conflict of interest by counsel representing multiple defendants accused of the same crime. *Id*. at 337. The quoted language is simply the court's rejection of the government's attempt to establish the proposition that a defendant who retains his own private counsel forfeits the right to claim a violation of the Sixth Amendment when his counsel proceeds under a conflict of interest. *See id*. at 342 (noting the government's argument that "the conduct of retained counsel does not involve state action"). And in that context, it of course makes sense to repudiate the rationality of a "distinction between retained and appointed counsel." *Id.* at 345. But that conclusion in no way suggests that there can never be any rational distinction between retained and appointed counsel. Clearly there can be, as it is of course constitutional for the government to condition its payment of counsel on an indigent defendant's willingness to accept government-provided counsel. *See Wheat*, 486 U.S. at 159, 164 (explaining that "while the right to select and be represented by one's preferred attorney is comprehended by the Sixth Amendment, the essential aim of the Amendment is to guarantee an effective advocate for each criminal defendant rather than to ensure that a defendant . . . [is] represented by the lawyer whom he prefers," and thus there is "a presumption in favor of [a defendant's] counsel of choice," though that right is not absolute).[11]

---

[11] *See also United States v. McKeighan*, 685 F.3d 956, 969 (10th Cir. 2012) ("[C]onsiderations of the fair administration of justice may take precedence over a defendant's right to counsel of choice. Only improper or 'erroneous' deprivations of a defendant's counsel of choice violate the Sixth Amendment.").

¶27 There is an obvious rationality—in economic efficiency—in this longstanding distinction. *See State v. Parduhn*, 2011 UT 55, ¶ 51, 283 P.3d 488 (Lee, J., dissenting) (recognizing the "obvious and intended efficiencies" of employing legal aid associations "as the exclusive source for the defense of indigents" (internal quotation marks omitted)); *see also Hatch v. Oklahoma*, 58 F.3d 1447, 1456 (10th Cir. 1995) (explaining that the "sounder and more efficient use of the state's resources" constituted a rational basis for limiting the number and distribution of state-staffed investigators available to indigent defendants), *overruled in part on other grounds by Daniels v. United States*, 254 F.3d 1180, 1188 n.1 (10th Cir. 2001) (en banc). And a similar rationality sustains the distinction in the 2012 IDA.

C

¶28 Earl's final claim is a challenge to the legality of the method by which Utah County and Salt Lake County have elected to provide defense services under the 2012 IDA. This claim is a converse of Earl's constitutional claims in terms of preservation: She preserved this argument in the Fourth District case but not in the Third District case. We accordingly reject this claim on preservation grounds as it extends to the Third District case, but consider its merits as applied to the Fourth District case.

¶29 The essence of Earl's claim is her assertion that the operative provision of the 2012 IDA—which generally conditions a defendant's eligibility for defense resources on the government's provision of a "defense services provider," UTAH CODE § 77-32-303(2)—was not satisfied by Utah County because it did not follow applicable legal requirements for its contract with the Utah County Public Defender's Association. In support of this claim, Earl asserts that the county has not complied with the notice and public bidding requirements of the state procurement code, UTAH CODE Title 63G, Chapter 6a, or the notice provision of the IDA itself, UTAH CODE § 77-32-302(2)(b) (requiring court to assign the "defense services provider" to provide a legal defense for an indigent defendant when "the court has received notice or a copy of the contract").

¶30 This argument falters on several grounds. First, the qualifications for a "defense services provider" are set forth in the IDA, not in the procurement code, and the Utah County Public

Defender's Association easily qualifies under the IDA. The IDA defines "defense services provider" broadly. The statutory definition includes any "legal aid association, legal defender's office, regional legal defense association, law firm, attorney, or attorneys contracting with a county or municipality to provide legal defense." UTAH CODE § 77-32-201(4). The Utah County Public Defender's Association falls within the broad terms of this definition. It is a "legal aid association" with a longstanding contractual relationship with Utah County.

¶31 Second, the applicable notice requirements are again prescribed in the IDA, not in the procurement code. And the governing notice provision is straightforward. It requires only that the court have "received notice or a copy of the contract" between the county and the provider. UTAH CODE § 77-32-302(2)(b). Clearly the Fourth District Court has notice of the Public Defender's Association's relationship with the county, as judges in the district have long assigned the association to provide a legal defense to the indigent. That is all the notice that is required under the IDA, and the Public Defender's Association accordingly satisfies the IDA's requirements for a "defense services provider."

¶32 Finally, the public bidding and notice requirements of the state procurement code are not properly implicated in this proceeding. If Earl were a contractor seeking to compete in a competitive bidding process, she would be within the zone of interests protected by the procurement code, and thus have standing to sue under its terms.[12] *See Ball v. Pub. Serv. Comm'n (In*

---

[12] In such a suit, the parties would be in a position to litigate questions raised by Earl but not properly before us here. In her brief, Earl chides Utah County and Salt Lake County for not submitting their defense service provider contracts to public bidding, competitive proposal, and public notice as required under the procurement code. Her arguments raise the question whether a longstanding public defense contract complying with the IDA would still be required to be reopened and subjected to the terms of the procurement code, and not grandfathered or otherwise exempted from its terms. *See* UTAH CODE §§ 63G-6a-802(2),(3) (allowing a procurement unit to "award a contract for a procurement item without competition" upon a written determination

*re Questar Gas Co.)*, 2007 UT 79, ¶ 61, 175 P.3d 545 (stating that an aggrieved party "must establish that the injury he complains of . . . falls within the zone of interests sought to be protected by the statutory provision whose violation forms the legal basis for his complaint" (alteration in original ) (internal quotation marks omitted); *Forsberg v. Bovis Lend Lease, Inc.*, 2008 UT App 146, ¶ 9, 184 P.3d 610 ("Standing to assert rights created by statute requires that the plaintiff be within the zone of interest contemplated by [the statute] and have suffered a distinct and palpable injury." (alteration in original) (internal quotation marks omitted). But this is not a suit by a competing contractor under the procurement code. It is a request for defense resources filed by an indigent defendant in a pending criminal case. And in that context, it is the IDA, and not the procurement code, that controls. Because the terms of the IDA are met, Earl has no grounds for challenging the viability of Utah County's contract with the Public Defender's Association.[13]

### III

¶33  For all these reasons, we affirm the decisions of the Third and Fourth District Courts in their entirety. And we remand for further proceedings not inconsistent with this opinion.

————————

that "there is only one source for the procurement item," as in circumstances where "transitional costs" are "unreasonable").

[13] In light of this holding, we stop short of endorsing Judge Hansen's conclusion that Utah County had satisfied the IDA by establishing a "county legal defender's office" under Utah Code section 77-32-302(2)(a). We tend to agree with Earl that the statutory reference to a "county legal defender's office" has reference to an agency or department of local government, and not to a private association or organization under contract. Thus, although we do not adopt Judge Hansen's analysis, we nonetheless affirm his decision on the alternative grounds set forth above.